[813 NYS2d 170]

In the Matter of VIRGINIA R. IAQUINTA-SNIGUR (Admitted as VIRGINIA IAQUINTA-SNIGUR), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, April 4, 2006

68

**APPEARANCES OF COUNSEL**

*Gary L. Casella*, White Plains (*Forrest Strauss* of counsel), for petitioner.

*Jones Sledzik Garneau & Nardone, LLP*, Scarsdale (*Deborah A. Scalise* of counsel), for respondent.

**OPINION OF THE COURT**

Per Curiam.

The Grievance Committee served the respondent with a petition dated October 28, 2004, containing 29 charges of professional misconduct. The respondent served an answer dated March 8, 2005, in which she essentially admitted the factual allegations, but denied that she had misappropriated any funds and that she was guilty of professional misconduct.

Following preliminary telephone conferences, a hearing was held on May 18, 2005, during which the parties submitted a stipulation with respect to 83 petitioner exhibits and nine respondent exhibits, which were all marked into evidence. The petitioner rested without calling any witnesses. The respondent appeared with counsel, testified on her own behalf and, following the hearing, submitted the affidavit of Thomas Iaquinta as an exhibit. Special Referee Becker sustained all 29 charges. The petitioner now moves to confirm the Special Referee's report and impose such discipline upon the respondent as the Court deems just and proper. The respondent supports the petitioner's motion insofar as it seeks to confirm the Special Referee's report with respect to Charges One, Two, Three, Four, Five, Nine, Eleven, Twenty-eight, and Twenty-nine, she cross-moves to disaffirm the Special Referee's report with respect to the remaining charges, and requests that the sanction imposed be limited to a public censure.

Charge One alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by failing to timely investigate, account for, and effect the return of an overpayment of funds wired into her escrow account by her client.

Prior to September 13, 2001, ABN/AMRO Mortgage Group, Inc. (hereinafter AMRO), agreed to purchase and fund a loan originated by Synergy Mortgage Company, a New York mortgage broker, on behalf of borrower Daniel Dixon. The respondent was designated as AMRO's settlement agent for the transaction, which was scheduled to close on or about September 13, 2001.

On September 13, 2001, AMRO wired $185,137.62 (representing the Dixon loan proceeds for disbursement) into the "Virginia R. Snigur Attorney at law IOLA Account," at the Bank of New York, account No. xxx-xxx0123 (hereinafter IOLA Trust Account).

On September 20, 2001, AMRO erroneously funded the Dixon loan closing a second time by wiring an additional $185,162.62 into that account.

Both the September 13, 2001, and the September 20, 2001, wire transfers were clearly reflected on the respondent's IOLA Trust Account bank statements for the period September 1, 2001, through September 28, 2001, which the respondent received from the Bank of New York in October 2001.

Although AMRO repeatedly requested at various times between September 27, 2001, and July 3, 2002, that the respondent account for and return its September 20, 2001, overpayment, the respondent failed to take sufficiently timely and/or adequate steps to account for and effect the refund of AMRO's overpayment until on or about July 3, 2002.

Charge Two alleges that the respondent violated Code of Professional Responsibility DR 1-102 (a) (2) (22 NYCRR 1200.3 [a] [2]) by failing to timely investigate, account for, and effect the return of an overpayment of funds wired into her IOLA Trust Account by her client.

This charge is predicated upon the facts of Charge One, and further alleges that the respondent knew or should have known that she was in possession of funds belonging to AMRO at all times from September 20, 2001, through July 3, 2002.

Charge Three is predicated upon the facts of Charges One and Two and alleges that the respondent engaged in conduct

resulting in the neglect of a legal matter entrusted to her, in violation of Code of Professional Responsibility DR 6-101 (a) (3) (22 NYCRR 1200.30 [a] [3]), by failing to timely investigate, account for, and effect the return of an overpayment of funds wired into her IOLA Trust Account by her client.

Charge Four is predicated upon the facts of Charges One and Two and alleges that the respondent engaged in conduct resulting in the failure to promptly notify a client of the receipt of funds in which the client has an interest, in violation of Code of Professional Responsibility DR 9-102 (c) (1) (22 NYCRR 1200.46 [c] [1]), by failing to timely discover, investigate, account for, and effect the return of an overpayment of funds wired into her IOLA Trust Account by her client.

Charge Five is predicated upon the facts of Charges One and Two and alleges that the respondent engaged in conduct resulting in the failure to promptly pay or deliver to her client, as requested by the client, the funds, securities, or other properties in the possession of the lawyer which the client was entitled to receive, in violation of Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]), by failing to timely discover, investigate, account for, and effect the return of an overpayment of funds wired into her IOLA Trust Account.

Charge Six alleges that the respondent engaged in conduct resulting in the misappropriation of funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by disbursing funds from that account without having first received a corresponding deposit for the related matter.

Between on or about September 25, 2001, and January 10, 2002, the respondent disbursed approximately $29,000 from her IOLA Trust Account in connection with a client matter (hereinafter the Iaquinta matter).

No deposit of funds for the Iaquinta matter was made into the respondent's IOLA Trust Account until on or about January 10, 2002.

Charge Seven is predicated upon the facts of Charge Six and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from her IOLA Trust Account in breach of her fiduciary duties.

Charge Eight alleges that the respondent engaged in conduct constituting misappropriation, in violation of Code of Profes-

sional Responsibility DR 1-104 (c) (22 NYCRR 1200.5 [c]), by failing to maintain an adequate balance on deposit in her IOLA Trust Account.*

Beginning on or before September 1, 2001, and continuously thereafter through on or after July 31, 2002, the respondent maintained an IOLA Trust Account at the Bank of New York to receive and disburse funds, incident to her practice of law. On September 1, 2001, the opening balance on said account was less than the amount of funds that the respondent was required to be holding on deposit in the account on that date.

Charge Nine is predicated upon the facts of Charge Eight and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by failing to maintain an adequate balance on deposit in her IOLA Trust Account.

Charge Ten alleges that the respondent engaged in conduct involving the misappropriation of funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by disbursing funds from that account, payable to herself as and for her legal fees, without having first received a corresponding deposit for the related client matter into that account, in one or more of the following matters:

| Check No. | Amount | Date Cleared On | Paid To | Client | Date of Deposit/ (No. Days Converted) |
|---|---|---|---|---|---|
| 2736 | ($550) | 9/04/01 | V. Snigur | Radevic | 09/06/01 (2 days) |
| 2543 | ($550) | 10/05/01 | V. Snigur | Duryea | 10/09/01 (4 days) |
| 3149 | ($1,345) | 11/19/01 | V. Snigur | Griffel | 11/21/01 (2 days) |
| 3113 | ($675) | 12/06/01 | V. Snigur | Costillo | 12/12/01 (6 days) |
| 3138 | ($550) | 12/06/01 | V. Snigur | Soules | 12/10/01 (4 days) |
| 3253 | ($1,000) | 12/21/01 | V. Snigur | Bright | 12/27/01 (6 days) |
| 3348 | ($950) | 1/10/02 | V. Snigur | Summers | 01/11/02 (1 day) |
| 3415 | ($550) | 1/25/02 | V. Snigur | Cecchini | 01/28/02 (3 days) |
| 3422 | ($550) | 1/25/02 | V. Snigur | Schultz | 01/28/02 (3 days) |

* Grievance counsel advises on page 2, footnote 1, of his affirmation that although Charge Eight alleges misappropriation, due to a typographical error, it cites 22 NYCRR 1200.5 (c) instead of 22 NYCRR 1200.46 (a). The Special Referee and respondent also observed this error but incorrectly noted it with reference to Charge Six, which apparently is correct as set forth in the petition.

| 3517 | ($625) | 2/25/02 | V. Snigur | Cockerham | 02/27/02 (2 days) |
|------|--------|---------|-----------|-----------|-------------------|
| 3545 | ($500) | 3/04/02 | V. Snigur | Rafael | 03/06/02 (2 days) |
| 3646 | ($750) | 3/28/02 | V. Snigur | Fox | 03/29/02 (1 day) |
| 3793 | ($550) | 5/10/02 | V. Snigur | Rivera | 05/15/02 (5 days) |
| 3799 | ($550) | 5/15/02 | V. Snigur | Harzewski | 05/17/02 (2 days) |
| 3822 | ($680) | 5/29/02 | V. Snigur | Vantuyl | 05/30/02 (1 day) |
| 3839 | ($700) | 6/03/02 | V. Snigur | House | 06/05/02 (2 days) |
| 3928 | ($675) | 6/21/02 | V. Snigur | Trombli-Reti | 06/26/02 (5 days) |
| 3939 | ($655) | 6/24/02 | V. Snigur | Caldwell | 06/26/02 (2 days) |
| 4033 | ($575) | 7/23/02 | V. Snigur | Lonkweycz | 07/26/02 (3 days) |
| 4044 | ($575) | 7/23/02 | V. Snigur | Reilly | 07/26/02 (3 days) |

Charge Eleven is predicated upon the facts of Charge Ten and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by disbursing funds from her IOLA Trust Account without having first received a corresponding deposit for the related matter.

Charge Twelve alleges that the respondent misappropriated funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by disbursing funds from that account in an amount greater than the amount deposited therein for a related client matter (hereinafter the Bateman matter).

Between on or about January 7, 2002, and March 18, 2002, the respondent used her IOLA Trust Account to receive and disburse funds in connection with the Bateman matter. The aggregate amount of the funds that she disbursed in connection with that matter exceeded the amount of funds on deposit for that matter in her IOLA Trust Account.

Charge Thirteen is predicated upon the facts of Charge Twelve and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from her IOLA Trust Account in breach of her fiduciary duties.

Charge Fourteen alleges that the respondent misappropriated funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by disbursing funds from that account prior to the clearance of any corresponding deposit in that account for a related client matter (hereinafter the Cotler matter).

Between on or about March 8, 2002, and May 20, 2002, the respondent used her IOLA Trust Account to receive and disburse funds in connection with the Cotler matter.

On March 8, 2002, check No. 3614 in the amount of $1,152.75, payable to "Statewide Abstract," cleared the respondent's IOLA Trust Account, but no corresponding deposit for the Cotler matter was made into the respondent's IOLA Trust Account until on or about March 21, 2002.

Charge Fifteen is predicated upon the facts of Charge Fourteen and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from her IOLA Trust Account in breach of her fiduciary duties.

Charge Sixteen alleges that the respondent misappropriated funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by disbursing funds from that account prior to the clearance of any corresponding deposit in that account for a related client matter (hereinafter the Winglovitz matter).

Between on or about December 19, 2001, and January 17, 2002, the respondent used her IOLA Trust Account to receive and disburse funds in connection with the Winglovitz matter. Beginning on December 19, 2001, and on various dates thereafter through and including January 7, 2002, $107,000 in the form of six difference checks, disbursed by the respondent in connection with the Winglovitz matter, cleared the respondent's IOLA Trust Account, but no corresponding deposit for the Winglovitz matter was made into the respondent's IOLA Trust Account until on or about January 17, 2002.

Charge Seventeen is predicated upon the facts of Charge Sixteen and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from her IOLA Trust Account in breach of her fiduciary duties.

Charge Eighteen alleges that the respondent misappropriated funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) by disbursing funds from that account prior to the clearance of any corresponding deposit in that account for a related client matter (hereinafter the Daly matter).

Between on or about January 17, 2002, and July 29, 2002, the respondent used her IOLA Trust Account to disburse approximately $21,938.06 in connection with the Daly matter. No corresponding deposit for the Daly matter was made into the respondent's IOLA Trust Account at any time prior to the disbursement of these funds.

Charge Nineteen is predicated upon the facts of Charge Eighteen and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from her IOLA Trust Account in breach of her fiduciary duties.

Charge Twenty alleges that the respondent misappropriated funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by repeatedly disbursing funds from that account when the amount on deposit therein for a related client matter (hereinafter the Drugan matter) was insufficient.

Between on or about November 28, 2001, and February 8, 2002, the respondent used her IOLA Trust Account to receive and or disburse funds in connection with the Drugan matter. The total amount of the disbursements with respect to the Drugan matter exceeded the amount of funds deposited for that matter in the respondent's account during that period.

Charge Twenty-one is predicated upon the facts of Charge Twenty and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from her IOLA Trust Account in breach of her fiduciary duties.

Charge Twenty-two alleges that the respondent misappropriated funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by disbursing funds from that account prior to the clearance of any corresponding deposit in that account for a related client matter (hereinafter the Sanzone matter).

Between on or about June 14, 2002, and July 1, 2002, the respondent used her IOLA Trust Account to receive and disburse funds with respect to the Sanzone matter. On June 17, 2002, check No. 3902 in the amount of $695, payable to the respondent, cleared the respondent's IOLA Trust Account. On June 17, 2002, check No. 3903 in the amount of $6,000 payable to

"Coldwell Banker," cleared the respondent's IOLA Trust Account. No corresponding deposit for the Sanzone matter was made into the respondent's IOLA Trust Account until on or about June 18, 2002.

Charge Twenty-three is predicated upon the facts of Charge Twenty-two and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from her IOLA Trust Account in breach of her fiduciary duties.

Charge Twenty-four alleges that the respondent misappropriated funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by disbursing funds from that account prior to the clearance of any corresponding deposit for a related client matter (hereinafter the Sibbering matter) and/or when the amount on deposit was insufficient to cover the disbursement.

Between on or before September 1, 2001, and November 26, 2001, the respondent used her IOLA Trust Account to receive and disburse funds in connection with the Sibbering matter and the balance therein fell to a negative number on one or more occasions.

Charge Twenty-five is predicated upon the facts of Charge Twenty-four and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from her IOLA Trust Account in breach of her fiduciary duties.

Charge Twenty-six alleges that the respondent misappropriated funds on deposit in her IOLA Trust Account, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]), by disbursing funds from that account when the amount on deposit for a related client matter (hereinafter the Summers matter) was insufficient.

Between January 10, 2002, and April 1, 2002, the respondent used her IOLA Trust Account to receive and/or disburse funds in connection with the Summers client matter in a total amount that exceeded the amount of funds deposited for that matter in the IOLA Trust Account.

Charge Twenty-seven is predicated upon the facts of Charge Twenty-six and alleges that the respondent engaged in conduct adversely reflecting on her fitness as a lawyer, in violation of

Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by converting funds from her IOLA Trust Account in breach of her fiduciary duties.

Charge Twenty-eight alleges that the respondent failed to adequately supervise, as appropriate, the work of nonlawyers in her employ, in violation of Code of Professional Responsibility DR 1-104 (c) (22 NYCRR 1200.5 [c]), by failing to properly inspect and review the work of her law office staff members.

Between September 1, 2001, and July 31, 2002, the respondent knowingly delegated a variety of responsibilities connected with her IOLA Trust Account including, inter alia, (a) responsibility for reconciling the account, (b) responsibility for making entries in the respondent's records of the activities in the account, and (c) responsibility for confirming the receipt and availability of funds prior to effecting the disbursement of such at various real estate transaction closings to nonlawyers then in the employ of her office.

The respondent failed to adequately supervise, oversee, inspect, or examine the foregoing work of her nonlawyer staff during the aforesaid period, thereby contributing to numerous account errors, anomalies, and fiduciary improprieties that occurred in connection with that account during that time.

Charge Twenty-nine is predicated upon the facts of Charge Twenty-eight and alleges that the respondent engaged in conduct which adversely reflects on her fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by failing to properly inspect and review the work of her law office staff members.

In view of the respondent's own admissions, both under oath and in the pleadings, along with the evidence adduced, the Special Referee properly sustained all of the charges.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider, inter alia, that the Special Referee noted that she cooperated throughout the investigation, that no client was harmed by her conduct, that in her approximately 17 years of practice the respondent had an unblemished record, and that numerous individuals, including friends, colleagues, and clients, submitted a collection of letters attesting to her good character.

The respondent also urges the Court to consider that the time frame involved in the underlying investigation was around the events of September 11, 2001, that she did not act intentionally

or with venality, and that she hired a new office manager last year, purchased computer software and obtained training for the maintenance of her accounts and records, and implemented certain record keeping procedures, including the regular reconciliation of her accounts with a certified public accountant.

As stated by the Special Referee, no matter what the respondent's explanations were, she had an affirmative obligation and duty to verify that the funds she was disbursing from her IOLA Trust Account had actually cleared and were present in the account. Her failure to ensure the transactional integrity of her IOLA Trust Account resulted in the misappropriation of funds she received incidental to her practice of law and was holding in her IOLA Trust Account, which were then improperly applied to the various client matters. This failure reflected adversely on her fitness to practice as an attorney.

Under the totality of circumstances, the respondent is suspended from the practice of law for a period of three years.

PRUDENTI, P.J., FLORIO, MILLER, SCHMIDT and ADAMS, JJ., concur.

Ordered that the motion is granted, and the cross-motion is denied; and it is further,

Ordered that the respondent, Virginia R. Iaquinta-Snigur, admitted as Virginia Iaquinta-Snigur, is suspended from the practice of law for a period of three years, commencing May 4, 2006, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said three-year period upon furnishing satisfactory proof that during the said period she (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10), (3) complied with the applicable provisions of 22 NYCRR 691.11 (c), and (4) otherwise properly conducted herself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Virginia R. Iaquinta-Snigur, admitted as Virginia Iaquinta-Snigur, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public

authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Virginia R. Iaquinta-Snigur, admitted as Virginia Iaquinta-Snigur, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and she shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 691.10 (f).