06-9009-am

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2009

(Decided: October 19, 2009)

Docket No. 06-9009-am

_____

In re Karen Jaffe,

        *Attorney.*

_____

Before:  Jacobs, Chief Judge, Cabranes, Pooler, Katzmann, Parker, Raggi, Wesley, Hall, Livingston, and Lynch, Circuit Judges.

This Court's Committee on Attorney Admissions and Grievances ("the Committee") has recommended that Karen Jaffe, an attorney admitted to the bar of this Court, be publicly reprimanded and permitted to withdraw from this Court's bar.  We adopt the Committee's findings of fact and its recommendation of public reprimand, but we order Jaffe removed from the bar of this Court.  See Second Circuit Rule 46.1(h)(4).

Linda F. Fedrizzi, Esq., New York, N.Y., for Karen Jaffe.

PER CURIAM:

By order filed April 2, 2008, this Court referred Karen Jaffe to the Court's Committee on Attorney Admissions and Grievances ("the Committee") for investigation of the matters described in that order and preparation of a report on whether she should be subject to disciplinary or other corrective measures.

During the Committee's proceedings, Jaffe had the opportunity to address the matters discussed in the Court's referral order, to testify under oath at a hearing held on July 23, 2008, and to present a post-hearing memorandum. Jaffe was represented in the proceedings by Linda F. Fedrizzi, Esq. Presiding over the hearing were Committee members David B. Fein, Esq., and Evan A. Davis, Esq. On December 12, 2008, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Jaffe with a copy of the Committee's report. Although Jaffe has not responded to the report, we consider her arguments raised before the Committee to be preserved, and consider them on

their merits.

In its report, the Committee concluded that there was clear and convincing evidence that Jaffe had engaged in conduct "unbecoming a member of the bar," within the meaning of Federal Rule of Appellate Procedure 46(c), by violating various rules and orders of the Court and various disciplinary rules of the New York Lawyer's Code of Responsibility.[1]  Specifically, the Committee found that Jaffe had: (a) failed to comply with many of the Court's scheduling orders, which was prejudicial to the administration of justice, in violation of New York Disciplinary Rule ("D.R.") 1-102(A)(5); (b) engaged in dishonesty, in violation of D.R. 1-102(A)(4), by presenting false statements to the Court concerning her inability to attend oral argument on two dates (c) filed a number of deficient briefs, in violation of Rule 28 of the Federal Rules of Appellate Procedure; (d) aided the unauthorized practice of law, in violation of D.R. 3-101(A), and improperly ratified and filed briefs drafted by unsupervised law students, in violation of  D.R. 1-104(D)(1);

---

[1] As of April 1, 2009, the disciplinary rules of the New York Lawyer's Code of Professional Responsibility were superseded by the New York Rules of Professional Conduct, which were promulgated as joint rules of the Appellate Divisions of the New York Supreme Court.  Use of the new rules would not alter any of our conclusions.

and,(e) engaged in a pattern of neglect of client matters, in violation of D.R. 6-101(A)(3), as evidenced by her chronic late filing of briefs, which resulted in the dismissal of at least twelve cases, her frequent filing of deficient briefs, and her failure to respond to a March 2007 order seeking information about one of her former clients.

The Committee also found that there were a number of aggravating and mitigating factors. The following were found to be aggravating factors: (1) Jaffe's prior disciplinary offenses; (2) her pattern of misconduct involving non-compliance with the Court's orders and her defective briefing; (3) her multiple offenses; (4) the vulnerability of Jaffe's immigrant clients, many of whom do not speak English; and (5) the unavailability of any defense premised on inexperience, due to Jaffe's substantial experience as an attorney. See ABA Standards § 9.22 (a), (c), (d), (g), (h), (i). The following were found to be mitigating factors: (1) Jaffe's personal problems with her own illness and a family member's illness around the time she was to respond to the March 2007 order; (2) Jaffe's cooperative attitude toward the Committee's proceedings; (3) the prior imposition of sanctions for Jaffe's false statements to the Court; and (4) Jaffe's remorse for making those false statements. See ABA

4

Standards § 9.32 (e), (k), (l).

Based on its factual findings, the Committee recommended that Jaffe be publicly reprimanded for her misconduct, that she be permitted to voluntarily withdraw from the bar of this Court, and, if she failed to voluntarily withdraw by a set deadline, that she be involuntarily removed from the Court's bar.

Upon due consideration of the Committee's report and the underlying record, we adopt the Committee's factual findings concerning Jaffe's misconduct in this Court. We also adopt the Committee's conclusion that Jaffe's misconduct constituted such a serious deviation from professional and ethical norms that it warrants both a public reprimand and removal from the bar of this Court. For the reasons discussed below, we adopt in part the Committee's recommendations concerning the appropriate disciplinary measures. The following discussion is intended to supplement the Committee's report in several respects, and explain our view of the appropriate disposition.

**The Relevance of Past Sanctions**

As a preliminary matter, we address Jaffe's assertion that at least some of the misconduct at issue in these proceedings has already resulted in discipline, and that

5

additional discipline should not be imposed.  We agree that, in general, an attorney should not be disciplined multiple times by the same court for the same misconduct, where the first panel issuing a sanction indicated that the sanction constituted final and complete discipline for the misconduct at issue.

However, that general principle does not alter the outcome of these proceedings for several reasons.  First, it is clear that Jaffe has not been disciplined for all of the serious misconduct at issue.  For example, Jaffe has not demonstrated, and the record does not indicate, that she received any discipline for her filing of briefs written by non-lawyers that were not reviewed by Jaffe or any other attorney.

Second, even in cases in which Jaffe was explicitly criticized by this Court for her deficient performance, she may be later disciplined by this Court for that performance if the prior orders did not suggest that the criticism (or other adverse action) was a final "sanction" for that misconduct.  See, e.g., Xiang Lin v. Ashcroft, No. 04-6426-ag, order filed Aug. 1, 2006; Guang Pin Lin v. Gonzales, No. 04-6130-ag, order filed Mar. 8, 2006; Yun Fen Jin v. Gonzales, No. 03-4719-ag, order filed Jan. 27, 2006; see also

Rong Hua Wang v. Gonzales, No. 06-3240-ag, order filed Mar. 5, 2008 (transferring to Grievance Panel the issue of whether Jaffe should be sanctioned for her performance in that appeal). Additionally, since attorney disciplinary proceedings are primarily remedial, the Double Jeopardy Clause of the Fifth Amendment does not apply. See In re Caranchini, 160 F.3d 420, 423-24 (8th Cir. 1998) (holding that disbarment did not violate double jeopardy, even though based on same conduct that resulted in prior sanctions under Federal Rule of Civil Procedure 11).

Third, even if an attorney already has received from this Court a final sanction for each of several instances of misconduct, we may nonetheless impose further discipline if the individual instances of misconduct are found to be part of a sanctionable pattern that has not itself been addressed. Finally, even where "discipline" is not appropriate, the Court may nonetheless determine, based on an attorney's prior behavior, that she will be unable to conform her future conduct to expected professional norms, and, as a result, that her ability to practice in this Court should be barred as a corrective measure in order to protect the public, other attorneys and litigants, the Court, and the administration of justice. See Theard v. United States, 354 U.S. 278, 282

7

(1957)("The power of disbarment is necessary for the protection of the public in order to strip [an attorney] of the implied representation by courts that [an attorney] who is allowed to hold himself out to practice before them is in 'good standing' so to do."); Ex Parte Wall, 107 U.S. 265, 288 (1883) ("The [disbarment] proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them.").[2]

Thus, we conclude that the Committee properly found Jaffe's prior disciplinary offenses and her pattern of misconduct to be aggravating factors, even if discipline was imposed for some of the prior offenses.

We also agree with the Committee's finding that the prior imposition of sanctions for some of Jaffe's misconduct

---

[2] See also Butler v. Biocore Medical Technologies, Inc., 348 F.3d 1163, 1172-73 (10th Cir. 2003) ("[A]ttorney misconduct both implicates the attorney's fitness to function as an officer of the court and triggers the court's responsibility to protect the public from unscrupulous or unqualified practitioners."); In re Echeles, 430 F.2d 347, 349 (7th Cir. 1970); In re Sacher, 206 F.2d 358, 360 (2d Cir. 1953) ("The purpose of striking an attorney from the rolls of a court is not to punish him but to protect the court itself and relieve the public of a member of the legal profession, who is unfit to serve as such, in order to maintain the respect due the court by insuring that attorneys, who are 'officers of the court,' are of good professional character."), reversed on other grounds, 347 U.S. 388 (1954).

8

constituted a mitigating factor.  However, by treating the prior sanctions as a mitigating factor, we conclude only that Jaffe should not be disciplined again by this Court for that discrete misconduct.  The misconduct underlying the prior sanctions remains relevant to the question of whether Jaffe can conform her future behavior to profession norms. Moreover, even if the previously sanctioned misconduct were ignored entirely, or treated as aberrational, we would nonetheless find that public reprimand and removal from this Court's bar are warranted by the remaining misconduct.[3]

**Jaffe's Conduct Relating to the Marshall/Muto Matter**

In her August 2008 post-hearing memorandum, Jaffe asserts that the Court has improperly assumed that she was the author of the three fraudulent briefs bearing the signature of Sharon Marshall, demonstrating the Court's prejudice against Jaffe.  See Aug. 2008 Mem. at 3, 4-5.  To the contrary, this Court's April 2008 referral order explicitly stated that Judge Keenan's investigation implicated Marshall and Joseph Muto in the fraudulent brief scheme and not Jaffe.  See Apr. 2008 order at 5.  We accepted Judge Keenan's findings then

---

[3] Although it has little effect on our present determination, we also note that there is no record of Jaffe filing the supplemental response required by our May 2008 order. *See* 06-9009-am, order filed May 16, 2008 at 2.

and we accept them now. Furthermore, the Committee's report also does not characterize Jaffe's involvement in the Marshall/Muto matter as sanctionable or otherwise inappropriate. Instead, the report states that the cases at issue were referred by Jaffe's paralegal to Muto and another attorney "without Jaffe's knowledge." Report at 3 n.1. We also accept that finding, as well as Jaffe's related assertions that she cooperated with Judge Keenan's investigation and helped to expose the fraudulent scheme. See Apr. 2008 Response to Referral Order at ¶¶ 14-19. Her cooperation and affirmative efforts to expose fraudulent conduct were commendable, and are considered mitigating factors.

However, Jaffe incorrectly asserts that she "complied in full with the [Court's] October, 2006 order," which required her to provide certain information about the Marshall/Muto matter. See id. at ¶ 16. As noted in the April 2008 referral order, Jaffe failed to file a timely response to the October 2006 order, even after being granted an extension, and was suspended as a result. See Apr. 2008 order at 4-5. After Jaffe filed a late response, she was reinstated. See id. at 5. Although Jaffe asserted that she did not receive the order that granted the extension, see In re Jaffe, No.

10

06-9009-am, Jaffe response filed Dec. 13, 2006, it remained her responsibility to ascertain the status of her extension request, particularly since significant time had passed after both the original due date for a response and the date she had requested an extension.

### Quality of Jaffe's Briefs

In her August 2008 post-hearing memorandum, Jaffe argues that her briefs were not deficient, because they contained all of the subdivisions required by Rule 28 and preserved all of the petitioners' rights. See Aug. 2008 Mem. at 3-4. We reject Jaffe's arguments, and adopt the Committee's findings concerning Jaffe's briefs. The numerous panels of this Court that found Jaffe's briefs inadequate were not merely complaining about a lack of required subdivisions in the briefs. Rather, they found the substance of the briefs to be **abysmal** – the worst deficiency being Jaffe's failure, in brief after brief, to properly apply the relevant legal principles to the specific facts of the case.

In support of her argument that her briefs complied with Rule 28, Jaffe provided, as an example, her brief in Dian Liang Jiang v. Gonzales, No. 04-0299-ag. See Aug. 2008 Mem. at 3. However, her brief in that case is riddled with errors, lacks necessary citations to the record, and contains

almost no argument relevant to the immigration judge's adverse credibility finding or his request for corroboration. See 04-0299-ag, brief filed Nov. 7, 2005. Fully half of the Statement of the Case is irrelevant since its last three paragraphs are duplicated verbatim from an entirely different case concerning a different petitioner and different facts. Compare id. at 5, with Zhong Ye Chang v. Gonzales, No. 04-4288-ag, brief filed Sept. 20, 2005 (Jaffe shown as counsel for petitioner). Although the Dian Liang Jiang case was remanded to the agency, it is difficult to attribute that result to Jaffe's briefing. See id., order filed June 15, 2007.

On the other hand, we agree with Jaffe that most of her briefs were filed within a limited period of time, and, thus, she had limited opportunity to correct her errors in future briefs once the deficiencies were brought to her attention in orders of the Court. See Aug. 2008 Mem. at 5-6. However, she did not request leave to file amended briefs after being put on notice, and, after being advised of her briefing deficiencies as early as December 1, 2005, see Xiu Ming Wang v. Gonzales, No. 03-4951-ag, amended order filed Dec. 1, 2005, she filed at least three deficient briefs after that date, see Hui Ming Shao v. Ashcroft, No. 04-0941-ag, brief

received Dec. 15, 2005 and filed Nov. 15, 2006; Zeng Bing Liu v. Gonzales, No. 05-3860-ag, brief received Dec. 28, 2005, order filed Aug. 10, 2006 (describing deficiencies in brief and relieving Jaffe); Zhou Jin Yuan v. Gonzales, Nos. 05-1333-ag (L), 05-1334-ag (Con.), brief received Dec. 29, 2005, order filed Oct. 27, 2006 (same).  Furthermore, her related argument that her briefs were not deficient, and her presentation of the Dian Liang Jiang brief as an example of her adequate briefing, renders doubtful the suggestion that she might have improved her briefing in later cases had she been given earlier notice of the deficiencies.

To the extent that briefing deficiencies resulted from Jaffe filing the unreviewed briefs of law students, an explanation Jaffe provided to the Committee, Judge Keenan, and this Court, see July 2008 Hearing Transcript at 16, 30-31, 47; Keenan Report at 22-23, that clearly constitutes an aggravating rather than mitigating factor.  Indeed Jaffe's explanation is a clear concession that she aided the unauthorized practice of law, in violation of D.R. 3-101(A), and that she improperly ratified and filed briefs drafted by unsupervised law students, in violation of  D.R. 1-104(D).

We want to make it clear that the deficiencies of Jaffe's conduct, in the aggregate, bespeak of something far more

13

serious than a lack of competence or ability.  They exhibit an indifference to the rights and legal well-being of her clients, and to her professional obligations, including the obligation of candor, to this Court.

**Permitting Voluntary Withdrawal from this Court's Bar**

We agree with the Committee that Jaffe's misconduct in this Court put her vulnerable clients at grave risk, violated numerous important professional obligations, and therefore warrants both public reprimand and removal from the bar of this Court.  The procedure recommended by the Committee – permitting Jaffe to voluntarily withdraw – was suggested by the Committee to avoid "automatic" reciprocal discipline by other jurisdictions.  We doubt the Committee's recommendation would produce its intended result.  First, if we impose discipline – a public reprimand accompanied by the sort of "voluntary" resignation suggested in the report clearly qualify as discipline – we lack any power to control how other jurisdictions respond to that discipline under their reciprocal disciplinary rules.

Moreover, even if we simply permitted Jaffe to resign, without imposing any other sanction, New York and other jurisdictions would still be able to impose reciprocal discipline.  The rules of all of New York's judicial

14

departments permit reciprocal discipline to be imposed on a New York attorney who resigns from another jurisdiction's bar while under investigation for possible professional misconduct in that other jurisdiction.  See In re Steinbach, 228 A.D.2d 88, 89-90, 651 N.Y.S.2d 523, 524-25 (1st Dep't 1997) (citing NYCRR § 603.3, ordering disbarment pursuant to resignation from Florida bar); In re Weisser, 214 A.D.2d 33, 34, 631 N.Y.S.2d 373, 373-74 (2d Dep't 1995) (citing 22 NYCRR § 691.3(d), imposing censure pursuant to resignation from Florida bar); In re Kriz, 56 A.D.3d 1116, 867 N.Y.S.2d 357, 358 (3d Dep't 2008) (citing 22 NYCRR § 806.19, ordering disbarment pursuant to resignation from Connecticut bar); In re Hoffman, 180 A.D.2d 75, 76, 583 N.Y.S.2d 106, 107 (4th Dep't 1992) (citing 22 NYCRR § 1022.22, ordering suspension pursuant to resignation from Florida bar).[4]

Second, even if we were disinclined to inform the New

---

[4] The same rule applies in other jurisdictions, including all of the federal courts located in New York. *See* U.S. Dist. Cts. for the Southern and Eastern Districts of New York, Local Civil Rule 1.5(b)(3); U.S. Dist. Ct. for the Northern District of New York, Local Rule 83.4(c); U.S. Dist. Ct. for the Western District of New York, Local Rule 83.3(c); *In re Goldman*, 910 A.2d 291, 292 (D.C. 2006) ("In the District of Columbia, a sister court's acceptance of an attorney's resignation pending a disciplinary investigation is a proper predicate for reciprocal discipline."); *In re Skripek*, 156 N.J. 399, 719 A.2d 159, 160 (N.J. 1998) (reprimanding, as a matter of reciprocal discipline, an attorney who had been disbarred in New York after submitting his resignation during an ethics investigation).

15

York disciplinary authorities of the action we take in this proceeding, Jaffe herself is obligated to inform those authorities of this order under New York law. See 22 NYCRR 603.3(d) (1st Dep't); 22 NYCRR 691.3(e) (2d Dep't); 22 NYCRR 806.19(b) (3d Dep't). Third, the only aspect of reciprocal discipline that is "automatic" is the fact that reciprocal disciplinary proceedings can be automatically initiated upon notice of the imposition of discipline by a sister court. Although there may be a presumption that discipline should be imposed on a reciprocal basis, it is not automatic and is generally rebuttable. See, e.g., 22 NYCRR 603.3(b) (1st Dep't); 22 NYCRR 691.3(b) (2d Dep't); 22 NYCRR 806.19(c) (3d Dep't); 22 NYCRR 1022.22 (4th Dep't). In any event, as suggested above, a resignation while under investigation does not sufficiently alter the situation so as to make the reciprocal disciplinary process less "automatic."

Our task here is to determine the appropriate level of sanction for Jaffe's conduct before this Court. Jaffe failed to comply with a substantial number of this Court's scheduling orders in a way that was prejudicial to the administration of justice, in violation of New York Disciplinary Rule ("D.R.") 1-102(A)(5). She deliberately lied to this Court in violation of D.R. 1-102(A)(4) concerning her inability to attend oral

16

argument on two dates. She filed a number of totally deficient briefs, in violation of Rule 28 of the Federal Rules of Appellate Procedure and engaged in a pattern of neglect of client matters, in violation of D.R. 6-101(A)(3), as evidenced by her chronic late filing of briefs, which resulted in the dismissal of at least twelve cases, and her failure to respond to a March 2007 order seeking information about one of her former clients. She aided the unauthorized practice of law, in violation of D.R. 3-101(A), and improperly ratified and filed briefs drafted by unsupervised law students in violation of D.R. 1-104(D)(1). In our view the appropriate remedy here is the termination of her right to appear as an attorney before our Court. Furthermore, while we acknowledge the Committee's reasons for recommending that the termination be through withdrawal, we believe it would be misleading to suggest in any way that Jaffe's separation from this Court's bar was voluntary.

Finally, the Court wishes to convey its appreciation for the Committee's labors both in this particular matter and in the development of the Court's new attorney grievance process. Over the past two and a half years, the Committee has tested the Court's new investigatory and hearing process by handling a substantial number of matters. The Committee's services

have been invaluable.

**Conclusions**

Upon due consideration, it is hereby ORDERED that, except as noted above, the Committee's findings and recommendations are adopted by the Court, and Jaffe is PUBLICLY REPRIMANDED and REMOVED FROM THE BAR OF THIS COURT.  Although we agree with the Committee that various mitigating factors are present, the totality of Jaffe's conduct leaves us without assurance that she can conform her future conduct in this Court to all professional and ethical norms.

Jaffe must disclose this order in any future disciplinary proceeding or bar application, and if required by any bar or court rule or order.  Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other published decisions of this Court.  The text of this panel's April 2008 order referring this matter to the Committee, the text of this panel's May 2008 order, and the Committee's report are also to be released to the public, as Appendices to the present order.

The Clerk of Court also is directed to serve a copy of this order on Jaffe, this Court's Committee on Attorney Admissions and Grievances, the attorney disciplinary committee

18

for the New York State Appellate Division, First Department, the attorney disciplinary officials for the Executive Office of Immigration Review, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

## APPENDIX 1

**Text of April 2008 order referring Karen Jaffe
to this Court's Committee on Attorney Admissions and Grievances**

For the reasons that follow, Karen Jaffe is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether she should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h).  We express no opinion here as to an appropriate disposition.  The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Jaffe was referred to this panel as a result of her actions in a number of cases before this Court.  We note first that many of Jaffe's cases have been dismissed for failure to comply with briefing schedules.  *See Xiang Xing Lin v. Ashcroft*, No. 03-4966-ag at 5/16/05 Entry; *Zu Fu Zhang v. Ashcroft*, No. 03-4369-ag at 9/21/05 Entry; *Xin Lin v. Ashcroft*, No. 03-41048-ag at 10/17/05 Entry; *Gui Bin Pan v. Ashcroft*, No. 04-1096-ag at 10/19/05 Entry; *Qi Guan Lin v. Ashcroft*, No. 04-2469-ag at 10/20/05 Entry; *Shiang Qing Lin v. Ashcroft*, No. 04-2471-ag at 10/20/05 Entry; *Weng Liang v. Ashcroft*, No. 04-0790-ag at 10/19/05 Entry; *Kuang Xun Wang v. Ashcroft*, 04-3473-ag at 12/27/05 Entry;  *Yan Lin v. Ashcroft*, No. 04-6427-ag at 1/6/06 Entry; *Wei Pin Chen v. Ashcroft*, No. 05-0367-ag at 1/9/06 Entry; *Hui Li v. Gonzales*, No. 05-1090-ag at 1/10/06 Entry; *Qin Xing Lin v. Ashcroft*, No. 03-4513-ag at 9/21/06 Entry.

20

Additionally, this Court has, in numerous orders, noted Jaffe's deficient briefing and warned that her continued failure to comply with the Federal Rules of Appellate Procedure could result in sanctions. *See, e.g., Shou Qing Liu v. Gonzales*, No. 03-40331-ag, 157 Fed.Appx. 403 (2d Cir. Dec. 7, 2005); *Xian Gui Chen v. Gonzales*, No. 04-1954-ag, 157 Fed.Appx. 430 (2d Cir. Dec. 8, 2005); *Wan Qin Lin v. Gonzales*, No. 04-2175-ag, 158 Fed.Appx. 324 (2d Cir. Dec.12, 2005); *Jin Qiu Zheng v. Gonzales*, No. 03-40530-ag, 163 Fed.Appx. 10 (2d Cir. Dec. 22, 2005); *Ji Wei Ni v. Ashcroft*, No. 04-6357-ag at 1/3/06 Entry; *Chang Zhao Chen v. Gonzales*, No. 03-40039-ag, 162 Fed.Appx.39 (2d Cir. Jan. 6, 2006); *Xiu Gao v. Gonzales*, No. 04-0028-ag, 163 Fed.Appx. 45 (2d Cir. Jan. 19, 2006); *Ke Jin Chen v. Gonzales*, No. 04-2528-ag, 163 Fed.Appx. 82 (2d Cir. Jan. 23, 2006); *Jin v. Gonzales*, No. 03-4719-ag, 165 Fed.Appx. 36 (2d Cir. Jan 27, 2006); *Mai Chai Zhu v. Gonzales*, No. 04-1100-ag, 164 Fed.Appx. 162 (2d Cir. Jan. 31, 2006); *Yin Yan Qu v. Gonzales*, No. 04-4290-ag, 167 Fed.Appx. 283 (2d Cir. Feb. 15, 2006); *see also Jian Qing Lin v. Mukasey*, Nos. 05-0696-ag (L) and 05-0717-ag (Con) at 11/15/07 Entry(discussing Jaffe's "manifest ineffective assistance of counsel" and relieving her from representing petitioner); *Guang Pin Lin v. Gonzales*, No. 04-6130-ag, 170 Fed.Appx. 189 (2d Cir. Mar. 8, 2006)(describing brief as "abysmal"); *Xiu Ming Wang v. Gonzales*, No. 03-4951-ag, 156 Fed.Appx. 395 (2d Cir. Dec. 1, 2005) (noting briefing deficiencies without warning of possible future sanctions).

21

However, despite the repeated warnings from this Court, Jaffe continued to submit deficient briefs, *see Zeng Bing Liu v. Gonzales*, No. 05-3860-ag, at 12/28/05 Entry (brief received), and 8/10/06 Entry, 193 Fed.Appx. 51 (order describing deficiencies in brief and relieving Jaffe); *Zhou Jin Yuan v. Gonzales*, Nos. 05-1333-ag (L), 05-1334-ag (Con.), at 12/29/05 Entry (brief received), and 10/27/06 Entry, 202 Fed.Appx. 506 (order describing deficiencies in brief and relieving Jaffe), and there is no indication that she attempted to file revised briefs in any of the appeals that were pending at the time she received the warnings.

This Court's recent order in *Jian Qing Lin*, Nos. 05-0696-ag (L), 05-0717-ag (Con), may serve as a fair example of the types of deficiencies this Court has found in Jaffe's briefs. The order in that case stated that Jaffe had demonstrated "manifest ineffective assistance of counsel" throughout the proceedings, and provided six examples of her poor performance. *Id.*, at 11/15/07 Entry. Aside from those examples, review of the proceedings in that case suggests that Jaffe's poor performance also seriously affected the merits of her clients' appeal. Rather than immediately appealing to this Court from the November 2004 Board of Immigration Appeals ("BIA") final orders of removal, Jaffe instead submitted a letter to the BIA "moving to reopen" the administrative proceedings, thereby waiving her clients' ability to contest the merits of the November 2004 orders in this Court. However, the brief Jaffe did ultimately submit to this Court focused on the decision of the

22

immigration judge ("IJ") denying the petitioners' asylum applications, even though the IJ's decision and the BIA's final removal orders were not reviewable due to Jaffe's failure to directly appeal those earlier orders to this Court in a timely fashion.  Furthermore, the brief not only failed to identify the alleged plain error in the BIA opinion (as noted in the Court's order), but also did not contest the BIA's denial of the motion to reopen, offered no explanation for Jaffe's failure to appeal the BIA's final orders of removal, did not raise ineffective assistance of counsel as a ground for this Court to reverse the BIA's denial of the motion to reopen, and failed to bring to this Court's attention a material factual error in the BIA's proceedings relating to the motion to reopen, namely, that the transcript of proceedings before the IJ and the briefing schedule may not have been sent to Jaffe's proper address –  an error the government brought to this Court's attention.

More serious issues also have been brought to our attention. By order filed January 19, 2006, this Court required Jaffe to show cause why she should not be disciplined as the result of a false statement she had made concerning her failure to appear for oral argument on two dates.  *See Wong Xing Chen v. Gonzales*, No. 03-40018-ag at 1/19/06 Entry.[1]  Specifically, Jaffe had falsely stated

---

[1]The order to show cause was entered in *Wong Xing Chen v. Gonzales*, No. 03-40018-ag, but was thereafter assigned the separate docket number 06-9009-am.  *See In re Jaffe*, 06-9009-am at 5/1/06 Order (explaining assignment of new docket number).

to this Court that illness had precluded her from attending the required appearances; however, on those same dates, she had appeared before an IJ just two blocks from this Court's location. *Id.* In response to the suspension order, Jaffe admitted that she had made false statements, presented mitigating circumstances (concerning certain medical issues), and provided assurances that such conduct would not occur again. *See In re Jaffe*, No. 06-9009-am at 5/1/06 Entry. By order filed May 1, 2006, this Court suspended Jaffe from the bar of this Court for thirty days, based on the false statements.[2] *Id.*

Thereafter, the Court arranged for the former chair of the Immigration Law Committee of the Bar Association of the City of New York to meet with Jaffe to help her gain control of her large caseload of immigration appeals pending in this Court; however, that effort was not successful. *See In re Jaffe*, No. 06-9009-am at 7/13/06 Entry (describing efforts to aid Jaffe). A later effort by

[2]In July 2006, as a result of this Court's May 2006 suspension order, the BIA suspended Jaffe from practice before the BIA, the immigration courts, and the Department of Homeland Security. That 30-day suspension was made retroactive to an existing interim suspension before those courts, issued on June 12, 2006. *See In re Jaffe*, No. 06-9009-am at 7/13/06 Order; Executive Office for Immigration Review, http://www.usdoj.gov/eoir/press/subject.htm, at the following Professional Conduct Press Releases: 6/23/06 (discussing the BIA's immediate suspension of Jaffe following the Second Circuit's 30-day suspension); 7/20/06 (discussing BIA's final order of discipline against Jaffe, effective June 12, 2006); 7/26/06 (same); and 9/13/06 (discussing her July 27, 2006 reinstatement). Jaffe was also publicly censured by the Appellate Division, First Department, as a result of this behavior. *See In re Jaffe*, 832 N.Y.S.2d 177, 178 (1st Dep't 2007).

24

Court staff to ascertain Jaffe's plan to timely prosecute her cases in this Court was also unsuccessful. *Id.*

The Court then determined that a new remedial order was required, in light of, *inter alia*, "Jaffe's chronic failure to met briefing deadlines, often despite numerous extensions, ... her frequent submission of briefs that do not conform to the Rules of Appellate Procedure and that are of minimal competence, ...and her apparent lack of support staff to assist her in handling the more than 100 INS petitions [she then had] pending in this Court." *Id.* The new remedial order, *inter alia*, relieved Jaffe from all cases in which she had not submitted briefs, and prohibited her from serving as counsel before this Court in more than 30 cases at any one time. *Id.* As a result, she was relieved as counsel in approximately 75 cases. *See In re Jaffe*, No. 06-9009-am at 8/15/07 Order ("Keenan Report") at 23. The order also required Jaffe to provide this Court with the names and addresses of all the petitioners on a list of cases provided to her by the Clerk of this Court, to allow the Court to, *inter alia*, notify the petitioners that Jaffe was no longer representing them. *In re Jaffe*, No. 06-9009-am at 7/13/06 Entry. In August 2006, Jaffe sent this Court a letter providing some, but not all, of the information requested in the July 2006 order. *See* Jaffe Letter. However, Jaffe indicated that four of the listed petitioners "were not [her] clients originally," and, therefore, she had no records or addresses for them. *Id.* However, this rather unclear assertion was belied, for

at least one of those petitioners, by Jaffe's signature on that petitioner's petition for review. *See Wang v. Gonzales*, No. 06-3240-ag at 7/11/06 Entry. Based upon this conflicting information, by order filed March 22, 2007, this Court required Jaffe to provide additional information for that petitioner, within 30 days of the entry of the order. *See Wang v. Gonzales*, No. 06-3240-ag at 3/22/07 Entry. On April 17, 2007, Jaffe requested, by telephone, an extension because she had been "knocked down when trying to hail a cab." *Id.* at 4/17/07 Entry. On April 26, 2007, her attorney, Linda Fedrizzi, requested a 30-day extension to respond to this Court's May 2007 order. *Id.* at 4/26/07 Entry. This Court granted the extension and required Jaffe to respond on or before May 22, 2007. *Id.* at 5/4/07 Entry. On May 21, 2007, Jaffe again telephoned the Court, stating that she would not be able to meet the deadline because, as noted on this Court's docket sheet, "dog died, father sick, head/back/neck problems, etc., etc." *Id.* at 5/21/07 Entry. However, she never filed either a request for a further extension of time or the required response to the Court's March 22, 2007 order. By order filed March 5, 2008, a panel of this Court ordered that "the issue of whether Jaffe should be sanctioned for her performance in this appeal" be transferred to the Court's Grievance Panel. *Id.* at 3/5/08 Order.

In the meantime, by order filed in October 2006, this Court required Jaffe to submit an affidavit concerning the suspicious filing of briefs in three cases in which she had been relieved as

26

counsel pursuant to this Court's July 2006 sanction order: *Tung Feng Xi v. Gonzales*, No. 04-5742; *Lin Feng v. Gonzales*, No. 05-5817; and *Wu Deng Wei v. Gonzales*, No. 04-1813.  The briefs purported to have been written by Sharon Marshall, but Marshall was not a member of the Court's bar and could not be located through the telephone numbers and address supplied with the briefs.  *See In re Jaffe*, 06-9009-am at 10/4/06 Order.  Thereafter, this Court granted Jaffe's request to extend, until November 27, 2006, her deadline for a response to the October 2006 order, and warned her that "[n]o further extensions [would] be permitted, and failure to respond in a timely manner [would] incur the distinct risk of additional sanctions."  *See In re Jaffe*, 06-9009-am at 10/23/06 Order.  Jaffe failed to respond by the extended due date.  As a result, by order filed December 7, 2006, this Court suspended Jaffe from the Bar of this Court, but permitted an application for reinstatement upon full compliance with the October 2006 order.  *See In re Jaffe*, 06-9009-am at 12/07/06 Order.  On December 13, 2006, Jaffe filed affidavits which purported to explain the circumstances concerning the filing of the three briefs.  *See In re Jaffe*, 06-9009-am at 12/13/06 Entries.  This Court found that the affidavits "raised substantial questions concerning the propriety of the conduct of persons who are, or might be, or claim to be members of the Bar of this Court," including Sharon Marshall and Joseph Muto, and appointed the Honorable John F. Keenan, United States District Judge for the Southern District of New York, as

27

special master to conduct hearings on the matter. *See In re Jaffe*, 06-9009-am at 12/22/06 Order. The order also conditionally reinstated Jaffe as a member of the bar of this Court, pending receipt of Judge Keenan's report. *Id.*

In June 2007, Judge Keenan submitted his report. *See In re Jaffe*, No. 06-9009-am at 8/14/07 Order, attached report of Judge Keenan dated 6/26/07. The findings in the report implicated Marshall and Muto in, *inter alia*, a scheme to file fraudulent briefs in this Court, but did not implicate Jaffe. *Id.* Accordingly, in August 2007, this Court issued an order which, *inter alia*, reinstated Jaffe to the bar of this Court, subject to all of the conditions of this Court's July 13, 2006 order. *See In re Jaffe*, 06-9009-am, 8/14/007 Order at 2-3. The order also cautioned Jaffe "that the submission of briefs indicating lack of professional competence will subject her to the distinct risk of further sanctions." *Id.*

Although we are informed that Jaffe is counsel of record in two currently pending appeals, *see Mei Gao v. Gonzales*, No. 05-4888-ag; *Wang Lu v. Gonzales*, No. 04-4959-ag, this Court's records do not reveal any proceeding in this Court commenced by Jaffe since the entry of the August 2007 order.

Upon due consideration of the matters described above, it is ORDERED that Karen Jaffe is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report consistent with Federal Rule of Appellate Procedure 46, this

Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances. We request that the Committee expedite its proceedings in this matter.

It is further ORDERED that Karen Jaffe (a) show cause, within 14 days of the filing of this order, why she should not be suspended from the bar of this Court, or otherwise sanctioned, pending the proceedings of the Committee on Admissions and Grievances, based on any of the above-described conduct following, or otherwise not addressed by, this Court's prior sanction orders or on an inability to conform to the rules governing practice in this Court; (b) submit to this panel, within 14 days of the filing of this order, a complete list of all pending cases in this Court in which she is either counsel of record or performing any legal services for any litigant; (c) notify this panel, in writing, of any other cases in this Court, whether newly filed or reinstated, in which she is performing any legal services for any litigant, within 14 days of either the pleading initiating the new case or the motion seeking reinstatement of a case; and (d) with each submission required by clauses (b) and (c), attach an affidavit of the litigant for whom she is performing legal services, attesting to the fact that the litigant has read a copy of this order and wishes to proceed with Jaffe providing legal services.

The Clerk of Court is directed to serve a copy of this order on both Jaffe, at her address currently on file with this Court, and on the Law Offices of Linda Fedrizzi, P.C., at 25-84 Steinway

Street, Astoria, New York 11103.  If Ms. Fedrizzi is no longer representing Jaffe, she is requested to so inform this Court and to forward this order to Jaffe.

## APPENDIX 2

### Text of May 2008 order

By order filed April 2, 2008, this panel referred Karen Jaffe to this Court's Committee on Admissions and Grievances for investigation and preparation of a report on whether she should be subject to disciplinary or other corrective measures.  *See* Second Circuit Local Rule 46(h).  We also directed Jaffe to show cause why she should not be immediately suspended from practice before this Court, or otherwise sanctioned, pending proceedings before the Committee.  In her response, Jaffe states, *inter alia*, that she has only two proceedings currently pending before this Court, both of which are fully briefed, and has no plans to file any new cases in this Court in the near future.  We note that one of the cases that was pending at the time the response was filed has since been decided.  *See Wang Ding Lu v. Mukasey*, 04-4959-ag.

Upon due consideration, we hereby decline, at this time, to suspend or otherwise sanction Jaffe during the pendency of the Committee's proceedings.  However, notwithstanding Jaffe's stated intention not to appear before this Court in the near future, she is reminded that, pursuant to our April 2, 2008 order, she must

30

inform this panel of any future filings in current or subsequently-filed cases and must provide an affidavit from each petitioner in any future case, demonstrating that the petitioner has been informed of the April 2, 2008 order and wishes to continue with Jaffe's representation.  Furthermore, Jaffe is directed to submit to this panel, within fourteen days of this order, a letter providing (a) the docket numbers for the four cases listed in paragraphs 32 and 33 of her April 15, 2008 affidavit which do not have docket numbers following the case names, and (b) correct docket numbers for"Xue Hui Lin, Docket 04-0042" and "Mei Juan Liu, Docket 04-5807," as those numbers appear to belong to other appellants represented by other attorneys.

**APPENDIX 3**

**December 2008 Report of the Committee on Attorney Admissions and Grievances**

[remainder of page intentionally blank; text of Appendix 3 commences on following page]

*Mary Jo White*
*Chair*
*Debevoise & Plimpton LLP*
*919 Third Avenue*
*New York, NY 10022*
*Tel: (212) 909-6260*

*Shanya Dingle and Felix Gilman*
*Secretaries*
*Debevoise & Plimpton LLP*
*919 Third Avenue*
*New York, NY 10022*
*Tel: (212) 909-6000*
*Email: sjdingle@debevoise.com,*
*fjgilman@debevoise.com*

*Committee Members:*
*Eileen M. Blackwood*
*Terrence M. Connors*
*Paul C. Curnin*
*Deirdre M. Daly*
*Evan A. Davis*
*David B. Fein*
*Hon. Howard A. Levine, Ret.*
*Loretta E. Lynch*

## REPORT AND RECOMMENDATION OF
## COMMITTEE ON ADMISSIONS AND GRIEVANCES

## In re Karen Jaffe (06-9009-am)

## I.      Introduction

By Order dated April 2, 2008 (the "Referral Order"), the United States Court of Appeals for the Second Circuit (the "Court") referred Karen Jaffe to this Committee for investigation of her conduct before the Court and preparation of a report on whether she should be subject to disciplinary or other corrective measures.

The Referral Order provides that Jaffe was referred to this Committee "as a result of her actions in a number of cases before this Court." Specifically, the Referral Order cites (1) twelve of her appeals that were dismissed for failure to comply with the Court's briefing schedules; (2) fourteen of her appeals where the Court noted her "deficient briefing and warned that her continued failure to comply with the Federal Rules of Appellate Procedure could result in sanctions"; (3) two of her appeals where, "despite the repeated warnings from this Court, Jaffe continued to submit deficient briefs"; (4) a false statement she made to the Court concerning her failure to appear for oral argument on two dates; and (5) her failure to respond to Court orders in a timely fashion.

The Committee finds that Jaffe's repeated neglect of her cases before the Second Circuit warrants a sanction. In light of Jaffe's assertion to the Committee that she does not desire or intend to practice before the Second Circuit, the Committee recommends that Jaffe be permitted to withdraw from the Second Circuit Bar, that she be precluded from admission to the Second Circuit Bar in the future and that she be publicly reprimanded for her conduct. The Committee further recommends that in the event Jaffe does not voluntarily withdraw her admission to practice before the Second Circuit within sixty days of the Court's order, she should be removed from the Second Circuit Bar.

The following constitutes the Committee's report and recommendation to impose discipline on Jaffe.

## II.     This Disciplinary Proceeding

On April 2, 2008, the Court issued an Order to Show Cause regarding Jaffe's conduct as alleged in the Referral Order. On April 16, 2008, Jaffe provided a written response to the Referral Order. Jaffe stated that in her prior dealings with the Court, she had "acknowledged the errors and most humbly apologized for them." She offered, by way of explanation, not excuse, that "the issues I have faced with this Honorable Court were for briefs filed within a quantified time period – 2003 through 2006 – and that was the time period I encountered an overwhelming number of both personal and professional problems with my office staff, which I had explained in prior affidavits." Jaffe added that she had taken corrective measures, including not accepting any new appeals before the Court and determining not to handle any appeals before the Court in the near future. Jaffe argued that the Order was "grossly unfair and remarks upon matters which had previously been addressed by the courts or various committees and for which I have served my punishment." She referred repeatedly to mistreatment she received from the Court. In conclusion, she argued that she "should not be punished any further."

On May 30, 2008, the Committee sent Jaffe a Notice of Hearing and acknowledged receipt of Jaffe's response to the Referral Order. On or about July 7, 2008, Jaffe submitted supplemental material to the Committee, including medical records.

On July 23, 2008, a sub-committee consisting of David B. Fein and Evan A. Davis convened a hearing at which Ms. Jaffe, represented by Linda Fedrizzi, was the only witness.

On August 6, 2008, Jaffe's counsel submitted a post-hearing memorandum arguing that sanctions are not warranted because she has already been punished and that "this proceeding is barred by the doctrine of 'res judicata'."

2

33

## III. Factual Background

The following facts are taken from court records and Jaffe's written submissions and testimony.

### 1. Jaffe's Background and Practice

Jaffe is a graduate of New York University and Cardozo Law School. She was admitted to the New York State Bar in 1982 and was admitted to the Bar of the Second Circuit in 1997. She is also admitted to practice in the United States District Court for the Southern District of New York, and the Court of Appeals for the Fifth, Sixth, and Ninth Circuits.

Jaffe has worked on immigration matters since 1997, serving predominantly Chinese immigrant clients. Her staff was comprised of two paralegals but she dismissed them because of their involvement in the "Muto/Marshall" matter.[1] Jaffe is presently assisted by Chinese translators several hours a day as needed. She is also assisted by attorneys with whom she occasionally works on an "of counsel" basis and law students.

Jaffe has one case pending before the Court (Gao v. Gonzales, 05-4888-ag). She has declined to represent clients before the Court, and told the Committee that she does not plan to practice before the Second Circuit. She said that her office "will only accept matters before the Board of Immigration and Immigration Courts, as well as representation of children in neglect and Juvenile Delinquency Proceedings ... as well as my work as a pro bono publica attorney for abused women ...." Jaffe's counsel told the Committee that Jaffe "wishes to remain a member in good standing in the Second Circuit Court of Appeals so it does not impact upon her adversely in any of the other [Courts]" where she is admitted to practice.

### 2. Prior Warnings and Orders

In a number of orders issued from December 2005 through November 2007, the Court noted Jaffe's deficient briefing and warned of possible future sanctions.

By Order dated May 1, 2006, the Court suspended Jaffe for thirty days after she admitted making false statements to the Court, on two occasions, concerning her absence from an oral argument scheduled in connection with Chen v. Gonzales, 03-40018. Jaffe claimed that she was too ill to attend an oral argument on January 17, 2006 and on January 18, 2006 (the re-scheduled date of the January 17th oral argument), but on the mornings of January 17 and January 18, 2006, Jaffe attended hearings in immigration court, just two blocks from the Court of Appeals. As a

---

[1] The "Muto/Marshall" matter involved a review of suspicious filings of briefs in three cases in which Jaffe was relieved as counsel. The review, conducted by United States District Judge John Keenan, revealed that one of Jaffe's paralegals, Jun Lu, referred the cases to David Rodkin (a suspended attorney) and Joseph Muto (a disbarred attorney) without Jaffe's knowledge. Muto authored the briefs and likely signed his wife's name on the briefs, despite the fact that she was not admitted to practice before the Court.

3

result of the Court's May 2006 suspension, Jaffe was suspended by the BIA for thirty days and was publicly censured by the Appellate Division, First Department.

Following the suspension, the Court arranged for a former chairperson of a New York City Bar Association immigration committee to meet with Jaffe to help her with her large caseload of immigration appeals. That effort was unsuccessful, as well as a later similar effort by Court personnel.

By Order dated July 13, 2006, the Court relieved Jaffe from all cases before the Court in which she had not yet submitted briefs and prohibited her from serving as counsel before the Court in more than thirty cases at one time. The Court did so, in part, due to "Jaffe's chronic failure to meet briefing deadlines, often despite numerous extensions, and her frequent submission of briefs that do not conform to the Rules of Appellate Procedure and that are of minimal competence."

The Court's July 13, 2006 Order also directed Jaffe to provide the names and addresses of the petitioners involved in cases identified by the Court so that the petitioners could be notified that Jaffe was no longer representing them. In August 2006, Jaffe sent a letter to the Court providing some of the requested information and indicating that she did not have contact information for four of the petitioners because they had not been her clients originally and therefore she had no records for them. Based upon information that Jaffe did, in fact, represent one of those petitioners, the Court, by Order dated March 22, 2007, required Jaffe to provide additional information about that petitioner within thirty days. Jaffe sought extensions to the deadline to respond to the Court's Order, the last of which required her to respond by May 21, 2007. To date, Jaffe has not responded to the Court's Order.

## IV.  Legal Standard

Under the Rules of this Committee:

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office, or the rules of professional conduct of any other state or jurisdiction governing the attorney's conduct. An attorney may also be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct

4

unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or courts, or conduct inimical to the administration of justice." In re Snyder, 472 U.S. 634, 645 (1985). For "[m]ore specific guidance," we may look to "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." Id. at 646 n.7.

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. See, e.g., Gadda v. Ashcroft, 377 F.3d 934, 940 (9th Cir. 2004), Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 133 (2d Cir. 2004), Matter of Rabinowitz, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), United States v. Song, 902 F.2d 609 (7th Cir. 1990), Matter of Kraft, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), In re Bithoney, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility (the "Code") require that "[a] lawyer shall not ...[n]eglect a legal matter entrusted to the lawyer," D.R. 6-101(A)(3), [h]andle a legal matter without preparation adequate in the circumstances," D.R. 6-101(A)(2), or "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." D.R. 1-102. In addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

The Disciplinary Rules of the Code also provide that a lawyer "shall be responsible for a violation of the Disciplinary Rules by...a non-lawyer employed or retained by or associated with the lawyer that would be a violation of the Disciplinary Rules if engaged in by a lawyer if...[t]he lawyer orders, or directs the specific conduct, or, with knowledge of the specific conduct, ratifies it..." D.R. 1-104 (D) (1). Moreover, a "lawyer shall not aid a non-lawyer in the unauthorized practice of law." D.R. 3-101(A). "[T]o avoid aiding the unauthorized practice of law, the lawyer must at every step shoulder complete responsibility for the non-lawyer's work. In short, the lawyer must, by applying professional skill and judgment, first set the appropriate scope for the non-lawyer's work and then vet the non-lawyer's work and ensure its quality." See The Association of the Bar of the City of New York Committee on Professional and Judicial Ethics, Formal Opinion 2006-3, 2. Courts have imposed sanctions in cases where a lawyer has failed to adhere to the disciplinary rules governing the supervision of non-lawyers. In re Abrams, 855 N.Y.S.2d 768, 769 (N.Y. App.Div. 2008) (one year suspension for violations including the inadequate supervision of a non-lawyer); In re Bodow, 859 N.Y.S.2d 888 (N.Y. App.Div. 2008) (censured respondent for, inter alia, "failing to supervise adequately the work of a non-lawyer employee."); In re Iaquinat-Snigur, 813 N.Y.S.2d 170, 177-178 (N.Y. App.Div. 2006) (three year suspension for misconduct including failure to adequately supervise non-lawyers).

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the

5

Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, we should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. See ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## V. Factual Findings

### 1. Defaults on Scheduling Orders

Jaffe concedes that the cases referenced in the Referral Order were indeed dismissed because she did not comply with the Court's briefing schedules. Jaffe explained the defaults as follows: "I relied, because I am in court a lot and that's where my, really, my strength is, I relied on my paralegals to take care of things, to file things on time. And unfortunately, if they don't, it's my responsibility, and it's law office failure, but it's still my responsibility. But I relied on these people, and I shouldn't have. And I admit that." When Jaffe learned about the defaults, she did not seek the Court's permission to file the briefs out of time or otherwise take any remedial steps on behalf of her clients. She advises she returned her clients' legal fees and suggested that they retain other counsel after their cases were dismissed.

### 2. Deficient Briefs

The Court repeatedly warned Jaffe about her deficient briefs and the nature of the deficiencies. For example, in Liu v. Gonzales, 05-3860, the Court noted that Jaffe "submitted an ill-prepared motion to the BIA, which failed to state its basis or include critical supporting evidence," contained "inapposite arguments," and was "woefully inadequate." 193 Fed.Appx. 51, 52-53 (2d Cir. 2006). The Court found Jaffe's conduct particularly troubling in light of the fact that the "IJ found Liu credible about his past persecution but denied him relief on the basis of [a case superseded by statute]." Id. Jaffe told the Committee that she believes her brief complied with FRAP.

In Yuan v. Gonzales, 05-1333-ag and 05-1334-ag, the Court noted that Jaffe's brief contained "only a limited procedural history and inapposite legal arguments." The Court was troubled by Jaffe's failure to address two agency errors that negatively impacted her client. 202 Fed.Appx. 506, 508 (2d Cir. 2006).

6

In Lin v. Mukasey, 05-0696-ag and 05-0717-ag, Jaffe made the tactical decision to move to reopen the BIA proceedings instead of filing an appeal, thus waiving her clients' right to appeal the BIA's decision. Jaffe testified that someone at the BIA advised her to do that after a member of her staff failed to file a Notice of Appearance on her behalf. When the BIA refused to reopen the proceedings, Jaffe filed an appeal with the Court more than one month late. She testified that she did not think she needed to ask the Court for an extension of time to file her brief because "if [she] made a motion to file a brief out of time and [the Court] said yes, the brief still would have been in late." The Court determined that the brief Jaffe ultimately filed failed to address salient issues and ignored a material factual error in the BIA proceedings. Jaffe told this Committee in her affidavit that "one must remember that this brief was submitted in 2006, while your deponent was embroiled with the investigation concerning Joseph Muto and Sharon Marshall." This is incorrect. Jaffe filed her brief on November 21, 2005, whereas the Court did not order an investigation into the suspicious briefs filed by "Sharon Marshall" until December 22, 2006.

We reviewed the petitions Jaffe filed in the three matters cited above and find them each to be of very poor quality. Facts are asserted without citations to the record. The argument section is paltry. The petition is sloppily presented, replete with typographical errors. The table of authorities for each of the three different cases is the same, all containing the same errors (e.g., "Table of Authortities" and "Administartive Decisions"), and none matches the presentation of cases in the petition. In one petition, none of the cases listed in the table appear in the petition; in another, fewer than half the cases and decisions listed appear in the petition.

Jaffe contests the allegation that she routinely submitted deficient briefs before the Court. But on January 19, 2006, during a hearing to discuss the false statements that she made to the Court, Jaffe told the Court that the quality of a motion for summary affirmance that she filed in Chen v. Gonzales, was "below acceptable standards." In 2007, Jaffe testified that, "a lot of the briefs (in immigration appeals) were written by a student and I really didn't take the time to review them. And therefore they really weren't - - they were just not well written, and they were not - - they were just not good briefs."[2]

By her own admission, Jaffe signed and filed briefs that were written by law students at her direction with little to no supervision. In fact, Jaffe signed and filed some of these law student briefs *without* reading them herself. Jaffe's excuse for this conduct is simply that she was "very busy - - with [her] cases, and [she] didn't always have a chance to [review the briefs]." She expressed some regret for this shortcoming.

---

[2] When confronted with her earlier testimony, Jaffe said that she was "nervous" when she testified before Judge Keenan. She also said, "It was very hard being a witness, actually. And as I've, I've acknowledged before, the briefs, many were cursory. However, they did comply. So what I was trying to say to Judge Keenan was that, what I said to you before. I didn't review all of them. I told the student the contents of what I wanted. Unfortunately, I'm on my own, and I didn't take the time to review all of them. And when I did, I saw that they weren't the best possible briefs."

7

Jaffe did not seek the Court's permission to file corrected briefs. She explained her decision not to file corrected briefs as follows:

> "[I]n spite of anything that was said about my brief, they clearly would have been denied. I've gone through all of them many times. And even but for my briefs, the Court would have denied it, because they mentioned, in one case, the claim was frivolous, there's no nexus between - - any grounds for asylum they mentioned all kinds of different things. So I understand their point about reviewing the brief, but I also knew the issues in the cases and I didn't feel I had to do that."

### 3.  False Statements

Jaffe admitted in her testimony to this Committee that she lied to the Court when she was asked why she did not appear at oral argument on January 17, 2006. She testified that although she had a sinus infection that day, she did appear at two immigration matters that morning but did not appear for her oral argument before the Court. She said she was nervous about her first oral argument before the Court, was not feeling well and lied about it when called by the Court. She testified that she "did something very, very stupid, for which I'll never forgive myself." Jaffe's counsel stressed that Jaffe already received a thirty-day suspension for this incident.

### 4.  Non-Compliance with Court Orders

Jaffe acknowledged that she did not comply with the Court's Order of March 22, 2007 (requiring her to provide additional information about a petitioner whom the Court relieved her from representing). She has articulated a number of reasons that prevented her initial compliance with that Order, such as medical and family issues and the fact that the government responded to the Court's Order. However, she did not explain her failure to comply with that Order to date beyond testifying that it "slipped [her] mind."

## VI.  Disciplinary Action is Warranted

Based on clear and convincing evidence, the Committee finds that disciplinary action is warranted in this case based on "conduct unbecoming a member of the bar". Fed. R. App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or courts, or conduct inimical to the administration of justice." In re Snyder, 472 U.S. at 645. Specifically, Jaffe engaged in conduct prejudicial to the administration of justice by repeatedly failing to comply with the Court's briefing schedules. Jaffe also engaged in a pattern of neglect of client matters, in violation of D.R. 6-101(A)(3), as evidenced by her chronic filing of briefs out of time that resulted in the dismissal of twelve cases, her frequent filing of deficient briefs, and her failure to respond to the Court's March 22, 2007 Order seeking information for the purposes of notifying a petitioner that Jaffe no longer represented him. Jaffe has also violated

8

D.R. 3-101(A) for aiding the unauthorized practice of law and D.R. 1-104(D)(1) for ratifying and filing briefs that were drafted by unsupervised law students. Jaffe has also engaged in dishonesty, in violation of D.R. 1-102, for her false statements to the Court concerning her inability to attend oral argument on two dates.

There are aggravating and mitigating factors in this case. The aggravating factors are: (1) the prior disciplinary offenses; (2) a pattern of misconduct involving non-compliance with the Court's briefing schedules, orders, and defective briefing; (3) the multiple offenses; (4) the vulnerability of Jaffe's immigrant clients, many of whom do not speak English; and (5) Jaffe's substantial experience in the practice of law. ABA Standards § 9.22 (a), (c), (d), (g), (h), (i). The mitigating factors are: (1) Jaffe's personal problems with her own illness and a family member's illness around the time of the March 22, 2007 Order; (2) Jaffe's cooperative attitude toward these proceedings; (3) the prior imposition of sanctions for Jaffe's false statements to the Court; and (4) Jaffe's remorse for making false statements to the Court. ABA Standards § 9.32 (e), (k), (l).

The Committee is concerned about Jaffe's failure to take corrective action in the matters discussed herein. Jaffe did not take heed of the Court's warnings concerning her deficient briefs. Nor did she attempt to file corrected briefs even after acknowledging that many of the briefs she filed were drafted by law students without her supervision. Jaffe did not seek permission to file briefs out of time on behalf of the clients whose cases were dismissed because of defaults on the scheduling orders. While she could not keep up with the cases she had on her docket, she continued to take on new matters.

## VII.  Recommendation

In light of Jaffe's repeated neglect of her cases before the Second Circuit, her repeated failure to follow orders of the Court, her statement to the Committee that she does not wish or intend to practice before the Court and the aggravating and mitigating circumstances discussed above, the Committee recommends that Jaffe be permitted to withdraw from the Second Circuit Bar, that she be precluded from admission to the Second Circuit Bar in the future and that she be publicly reprimanded for her conduct. The Committee further recommends that in the event Jaffe does not voluntarily withdraw her admission to practice before the Second Circuit within sixty days of the Court's order, she should be removed from the Second Circuit Bar.

By permitting Jaffe to withdraw, along with a public censure, rather than removing Jaffe by order, the Court would not be causing automatic reciprocal discipline in other jurisdictions in light of the nature of the offense, mitigating factors present in this case and the fact that the scope of our review of her work was necessarily limited to matters before the Court.

9