# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 14th day of October, two thousand ten.

PRESENT:

José A. Cabranes,
Robert D. Sack,
Richard C. Wesley,
        *Circuit Judges.*

---

In re Ronald S. Salomon,

Attorney.

08-9043-am

**ORDER OF
GRIEVANCE PANEL**

---

FOR RONALD S. SALOMON:        RONALD S. SALOMON, Esq., New York, New York.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND **DECREED** that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, and RONALD S.

SALOMON is PUBLICLY REPRIMANDED and SUSPENDED from practice before this Court for a period of three months, based on the misconduct described in the Committee's report.

I. **Summary of Proceedings**

By order filed in April 2008, this Court referred Salomon to the Committee for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

During the Committee's proceedings, Salomon had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held on September 8, 2008. Salomon appeared *pro se*. Presiding over the hearing were Committee members Mary Jo White, Esq., Loretta E. Lynch, Esq., and the Honorable Howard A. Levine. Thereafter, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations.

In its report, the Committee concluded that there was clear and convincing evidence that Salomon had engaged in conduct warranting the imposition of discipline. *See* Report at 7. The Committee stated, *inter alia*, that Salomon had persisted, over a period of several years and despite explicit warnings from the Court, in failing to comply with this Court's scheduling orders and failing to diligently prosecute his clients' cases. *Id.*, at 6. The Committee specifically found that, between 2005 and

2

2008, Salomon had defaulted in approximately 125 cases out of a total of 190 cases, *id.*, at 2, 6, that he did not "appear to have taken organized or effective steps to protect the interests of those clients whose cases were dismissed," that numerous clients were put at grave risk of prejudice, and that his misconduct disrupted the Court's proceedings and burdened the Court's staff with additional work, *id.*, at 6.

The Committee also noted the presence of significant aggravating factors and limited mitigating factors, finding, *inter alia*, that Salomon's improved case management was not a significant mitigating factor, given his recent defaults in *Elyzabeth v. Keisler*, 07-4626-ag, and *Diallo v. Mukasey*, 08-0199-ag. *Id.* at 6-7. The Committee recommended that Salomon be: (1) suspended for a period of three months; (2) required to attend continuing legal education ("CLE") classes on law office management; and (3) required to submit periodic reports to the Court. *Id.* at 1, 7-8.

In his response to the Committee's report, Salomon did not dispute the Committee's factual findings, but requested that the Court consider additional mitigating factors and not adopt the Committee's recommendation that he be suspended. Response at 1. As he did during the Committee's proceedings, Salomon emphasized his success in obtaining relief for clients who had been subjected to female genital mutilation, as well as his commendable *pro bono* efforts on that issue. *Id.* at 1-2.

3

Salomon also addressed, *inter alia*, the Committee's concerns regarding his recent default in *Elyzabeth*, asserting that he had "made every effort to file a brief . . . after becoming aware that a briefing schedule had been set," and that "[c]hanges have been made to eliminate any office error of this kind in the future." *Id.* at 3. Finally, expressing concern that a reciprocal suspension at the agency level, based on a suspension by this Court, would have a negative effect on his clients' interests, Salomon requested that he be censured rather than suspended, and/or allowed to voluntarily withdraw from practice before this Court for an indefinite period. *Id.* at 4; Suppl. Response at 2-3. However, he requested that a voluntary withdrawal, if granted, not be publicly disclosed. Suppl. Response at 2.

## II. Additional Relevant Conduct

Review of this Court's docket indicates that, since the date of his referral to the Committee, Salomon has continued to disregard this Court's briefing deadlines. In addition to the incidents discussed in the Committee's report, Salomon has:

> (a) on five occasions, failed to file a brief, causing this Court to order him to show cause why the cases should not be dismissed based on his defaults.[1] In each of those five

---

[1] *See Bzeih v. Mukasey*, 08-0603-ag, order filed May 21, 2008; *Barry v. Mukasey*, 08-3772-ag, order filed Apr. 1, 2009; *Diallo v. Mukasey*, 08-4950-ag, order filed Mar. 26, 2009; *Fall v. Mukasey*, 08-5417-ag, order filed Apr. 2, 2009; *Barry v. Mukasey*, 08-5772-ag, order filed Apr. 1, 2009.

4

instances, however, Salomon timely responded to the order to show cause and the case proceeded to full briefing and a decision on the merits.

(b) in twelve cases, requested extensions of the briefing deadlines only after the deadlines had passed,[2] and

(c) in eight cases, filed his briefs after the applicable deadlines had passed.[3]

Many of those defaults occurred not only after Salomon had received notice of the April 2008 referral order, but also after the Committee's September 2008 hearing; three of the defaults occurred after Salomon had submitted his October 2009 response to the Committee's report.

---

[2] See *Bassel v. Mukasey*, 07-5426-ag, motion filed July 28, 2008 (requesting extension six weeks after briefing deadline); *Kakoro v. Mukasey*, 08-0278-ag, motion filed May 21, 2008 (three weeks after briefing deadline); *Sacko v. Mukasey*, 08-0281-ag, motion filed May 19, 2008 (two weeks); *Barry v. Mukasey*, 08-0325-ag, motion filed May 19, 2008 (three weeks); *Diallo v. Mukasey*, 08-1113-ag, motion filed June 24, 2008 (one day); *Sarr v. Holder*, 08-1706-ag, motion filed Aug. 15, 2008 (eleven days); *Sall v. Mukasey*, 08-1858-ag, motion filed July 16, 2008 (twelve days); *Barry v. Mukasey*, 08-3772-ag, motion filed Feb. 4, 2009 (two days); *Fall v. Mukasey*, 08-5417-ag, motion filed Feb. 13, 2009 (ten days); *Diallo v. Mukasey*, 08-5806-ag, motion filed Mar. 9, 2009 (thirteen days); *Abdourahamane v. Mukasey*, 08-5941-ag, motion filed Mar. 18, 2009 (nine days); *Kujabi v. Holder*, 09-2699-ag, motion filed Dec. 4, 2009 (one month).

[3] See *Bassel*, 07-5426-ag, entry dated Sept. 3, 2008 (brief received two weeks late); *Sy v. Mukasey*, 08-0210-ag, entry dated May 9, 2008 (two weeks late); *Niakhite v. Mukasey*, 08-0280-ag, entry dated May 2, 2008 (two days); *Sarr*, 08-1706-ag, entry dated Sept. 2, 2008 (two weeks); *Sall*, 08-1858-ag, entry dated Aug. 6, 2008 (two days); *Dos-Reis v. Mukasey*, 08-4999-ag, entry dated Feb. 19, 2009 (three weeks); *Haidara v. Holder*, 09-2956-ag, entry dated Feb. 16, 2010 (one day); *Camara v. Holder*, 10-1216-ag, entry dated Sept. 14, 2010 (three days).

In addition to his history of defaults, this Court recently found, in *Hadira v. Holder,* that Salomon had fallen "short of his responsibilities to his client," where this Court's review of the dispositive issue was foreclosed by Salomon's failure to exhaust the dispositive issue before the Board of Immigration Appeals, causing the denial of his client's claim in this Court. *See Hadira*, 09-2956-ag, order filed July 22, 2010, at 3 and 3 n.1.

Although significant mitigating factors may exist, we find the persistence of Salomon's misconduct throughout the pendency of this disciplinary proceeding to be disturbing. At the very least, his more recent defaults make it difficult to credit his assurances that he has instituted remedial measures to avoid future defaults.

**III. Conclusions**

We deny Salomon's request for disciplinary measures less onerous than a suspension. We find that a suspension is warranted by the magnitude of Salomon's misconduct, the likelihood that a number of his clients were prejudiced, and his continued failure to abide by this Court's scheduling orders. Furthermore, permitting Salomon to withdraw from practicing before this Court, without notice to the public of the circumstances, would not be in the interests of justice. *See In re Jaffe*, 585 F.3d 118, 125 (2d Cir. 2009) (finding removal from

this Court's bar to be the appropriate sanction, and concluding that "it would be misleading to suggest in any way that [the attorney's] separation from this Court's bar was voluntary"). Although, in *In re Yan Wang*, we permitted an attorney to resign from this Court's bar in lieu of the recommended imposition of a six-month suspension, we found that "misunderstandings about the nature of [the attorney's] withdrawal from this Court's bar [were] unlikely since the ... order [permitting the resignation was to] be made public." *Yan Wang*, 08-9039-am, 2010 WL 2812824, at *3 (2d Cir. July 19, 2010). *Yan Wang* is inapposite for that reason.

Additionally, privately granting leave to withdraw from this Court's bar would not avoid the possibility of reciprocal action by other disciplinary authorities. As noted in *Jaffe*, "[t]he rules of all of New York's judicial departments permit reciprocal discipline to be imposed on a New York attorney who resigns from another jurisdiction's bar while under investigation for possible professional misconduct in that other jurisdiction." *Jaffe*, 585 F.3d at 124 (citations omitted). Moreover, "even if we were disinclined to inform the New York disciplinary authorities of the action we take in this proceeding, [Salomon himself would be] obligated to inform those authorities of this order under New York law." *Id.* (citations omitted). The same principles are reflected in the rules of the

Executive Office for Immigration Review. *See* 8 C.F.R. §
1003.102(e) ("A practitioner who falls within one of the
following categories shall be subject to disciplinary sanctions
in the public interest if he or she: ... (e) Is subject to a
final order of disbarment or suspension, or has resigned while a
disciplinary investigation or proceeding is pending"); 8 C.F.R.
§ 1003.103(c) ("Duty of practitioner to notify EOIR of
conviction or discipline. Any practitioner ... who has been
disbarred or suspended by, or while a disciplinary investigation
or proceeding is pending has resigned from, ... any Federal
court, must notify the EOIR disciplinary counsel of any such
conviction or disciplinary action within 30 days of the issuance
of the initial order, even if an appeal of the conviction or
discipline is pending.").

Upon due consideration of the Committee's report, the
underlying record, and Salomon's submissions, it is hereby
ORDERED that Salomon is PUBLICLY REPRIMANDED and SUSPENDED from
practice before this Court for a period of three months, based
on the misconduct described in the Committee's report. It is
further ORDERED as follows:

> (a) The suspension period will commence twenty-eight
> days from the filing of this order. Salomon may file
> any briefs that currently have filing deadlines
> falling within the next twenty-eight days, and he may
> see through to completion any case in this Court in
> which his brief has been filed by the end of that
> twenty-eight day period. With respect to all of his
> other cases in this Court, Salomon must, within
> twenty-eight days, (i) inform his clients that they

must obtain new counsel or proceed *pro se*, (ii) turn over all client files and materials to those clients, (iii) cooperate in all other respects with his clients' efforts to prosecute their cases, and (iv) move to withdraw.

(b) Salomon must disclose this order to all clients in cases currently pending in this Court and to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Salomon also must, within thirty-five days of the filing of this order, file an affidavit with this Court confirming that he has complied with the requirements set forth in paragraphs (a) and (b).

(c) Salomon must complete, within six months of the filing date of this order, six hours of CLE on law office management, which must be taken in addition to, and not in fulfilment of, his regular CLE requirements. Salomon must submit information about proposed CLE courses directly to the Committee's secretary, who will inform him whether the Committee agrees that the proposed courses satisfy his obligation. Salomon must certify his completion of the required CLE courses by sworn statement filed with both this panel and the Committee's secretary within seven days after the end of the six-month period. The Committee may modify these deadlines, either on motion or *sua sponte*.

(d) Salomon must comply with the reporting requirements described on page 8 of the Committee's report.

The text of this panel's April 2008 order and the Committee's report are appended to, and deemed part of, the present order for purposes of disclosure of the order by Salomon and the Clerk of Court. The Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Salomon, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee

9

for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



By:   Michael Zachary
      Counsel to the Grievance Panel

## APPENDIX 1

### Text of April 2008 order

For the reasons that follow, Ronald Salomon is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures.  *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Since March 2005, this Court has dismissed 125 of the approximately 190 petitions for review for which Salomon was counsel of record for the petitioners, based on the petitioners' failure to comply with this Court's scheduling orders.  *See* Second Circuit cases docketed under 02-4150, 02-4266, 02-4514, 02-4554, 02-4618, 02-4699, 02-4946, 02-4918, 03-4055, 03-4053, 03-40157, 03-40184, 03-40431, 03-40438, 03-40536, 03-40931, 03-40997, 03-40971, 03-41179, 03-41245,  04-0066, 04-0579, 04-0656, 04-0657, 04-0659, 04-1299, 04-1302, 04-1866, 04-1916, 04-2326, 04-2327, 04-2331, 04-2334, 04-2336, 04-2587, 04-2953, 04-3066, 04-3093, 04-3094, 04-3095, 04-3341, 04-3345, 04-3681, 04-3715, 04-3912, 04-4055, 04-4178, 04-4323, 04-4738, 04-4739, 04-4799, 04-4902, 04-5107, 04-5279, 04-5344, 04-5470, 04-5532, 04-5535, 04-5796, 04-5797, 04-5926, 04-5945, 04-5947, 04-6138, 04-6203, 04-6345, 04-6549, 04-6550, 05-0101, 05-0103, 05-0657, 05-0851,

10

05-0858, 05-0860, 05-1045, 05-1857, 05-1939, 05-2348, 05-2670, 05-2859, 05-3218, 05-4125, 05-4228, 05-4516, 05-4983, 05-5111, 05-5711, 05-5791, 05-5832, 05-5918, 05-5932, 05-6070, 05-6331, 05-6573, 05-6576, 05-6715, 05-6723, 05-6828, 06-0040, 06-0431, 06-0774, 06-0957, 06-1382, 06-1386, 06-1513, 06-2135, 06-2202, 06-2885, 06-2980, 06-3154, 06-3156, 06-4006, 06-5208, 06-5400, 06-5503, 06-5539, 06-5559, 06-5584, 06-5677, 06-5760, 07-1257, 07-1281, 07-1542, 07-1871, and 07-2876. In a recent case, for example, this Court granted Salomon's motion to reinstate an appeal that had been dismissed based on his default, but warned him that his "cavalier treatment" of the cases must cease, that the brief had to be filed by January 18, 2008, and that no further extension requests would be entertained. *See Sylla v. Gonzales*, No. 07-1281-ag, order filed Dec. 3, 2007. Salomon failed to file the brief, resulting in dismissal of the appeal in February 2008. *Id.*, order filed Feb. 20, 2008. This Court also has dismissed one additional petition for review for which Salomon was counsel of record for the petitioner, based on the petitioner's failure to pay a filing fee. *See* Second Circuit case docketed under 06-2531. This Court's records for the cited cases do not indicate that, prior to the respective deadlines for filing of the briefs or payment of the filing fee, Salomon requested an extension of time to comply, a stay of proceedings, leave to withdraw as counsel, or withdrawal of the appeal. Moreover, in only four cases has Solomon corresponded with the Court regarding the appeal after his default. *See* Second Circuit cases docketed under 03-41245, 04-2336, 04-3341, and 07-1281. In three of the cases, Salomon moved to reinstate the appeals. *See* Second Circuit cases docketed under 03-41245, 04-2336, and 04-3341. In those cases, the motions to reinstate were filed between eight months and almost two years after the appeals were dismissed.

Upon due consideration of the matters described above, it is hereby ORDERED that Ronald Salomon is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
        Michael Zachary
        Supervisory Staff Attorney
        Counsel to the Grievance Panel

11

**August 2009 Report of the Committee
on Admissions and Grievances**

**REPORT & RECOMMENDATION**
**Re: In re Ronald S. Salomon, # 08-9043-am**

## I.     Introduction

By Order dated April 22, 2008, the United States Court of Appeals for the Second Circuit ("the Court") referred Ronald S. Salomon to this Committee, for investigation of his conduct before the Court – including, as described in the referral order, his frequent defaults on scheduling orders – and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

The Committee recommends that Salomon be suspended for a period of three months, that he be required to complete six hours of CLE in law office management, and that he be required to submit biannual status reports on the functioning of his practice for the next two years.

The following constitutes the Committee's report and recommendation to impose discipline on Salomon.

## II.     This Disciplinary Proceeding

On May 5, 2008, this Committee issued an Order to Show Cause regarding Salomon's conduct as alleged in the Court's referral orders, and giving notice of a hearing. After requesting an adjournment on June 3, 2008, Salomon submitted a written response on his own behalf on July 9, 2008. A hearing was held on September 8, 2008, conducted by a sub-committee consisting of Mary Jo White, Loretta E. Lynch, and the Hon. Howard A. Levine. Salomon appeared *pro se*, and presented no witnesses. Salomon submitted a post-hearing response on September 25, 2008, and, at the Committee's request, Salomon submitted a further response on

March 22, 2009.

### III.    Factual Background

The following facts are taken from court records and from Salomon's written submissions and testimony. Although Salomon proved unable to testify in detail as to his current caseload or the facts underlying the Court's referral order, the Committee found his testimony generally credible.

#### A.    Salomon's Conduct Prior to the Court's Referral Order

Salomon was admitted to the bar of the State of New York in 1991. He is a sole practitioner. His practice consists predominantly of immigration work, mostly asylum cases involving applicants from West Africa. Between 2005 and 2008, Salomon defaulted in a very large number of petitions for review. The Court's referral order, and the Committee's independent review, shows that approximately 125 out of approximately 190 petitions for review filed by Salomon during that period were dismissed for default. One additional case was dismissed for failure to pay a filing fee. Salomon does not appear to have moved in any of these cases, prior to their dismissal, for an extension of time, a stay of proceedings, or leave to withdraw. Prior to the Court's referral order, Salomon had moved for reinstatement in only four of these dismissed cases.

Toward the end of this period, Salomon received an express warning from the Court regarding his defaults. In an order dated December 3, 2007, granting Salomon's motion to reinstate a dismissed petition, *Sylla v. Gonzales*, 07-1281, the Court warned Salomon that his "cavalier treatment" of his cases must cease. Despite this warning, Salomon failed to comply with the extended briefing schedule in *Sylla*, and the petition was dismissed. Salomon also defaulted on other cases following the Court's warning, *see Barrie v. Gonzales*, 07-2876.

In three of those cases, Salomon moved to reinstate on his own initiative. *See Diallo v. Ashcroft*, 03-41425, *Sourabie v. Ashcroft*, 04-2336, and *Diallo v. Ashcroft*, 04-3341. The motion to reinstate in *Sourabie* was filed in July 2006, and denied in August 2006. The motions to reinstate the two *Diallo* cases were filed in June and July 2007, and denied in July and October, respectively. These motions were filed between nine months (*Diallo*, 04-2336) and nearly two years (*Diallo*, 04-3341, *Sourabie*) after the appeals were dismissed.

In a fourth case, *Sylla v. Gonzales*, 07-1281, after Salomon defaulted on the briefing schedule, the Court issued an order to show cause, dated October 17, 2007, following which the Court granted Salomon's request for reinstatement, but warned him that no further extensions would be granted. Salomon defaulted on the new briefing schedule, and the appeal was dismissed in February 2008.

Salomon has been the subject of one prior instance of discipline. On March 7, 2007, Salomon was admonished by the Disciplinary Committee of the New York Supreme Court

-2-

Appellate Division, First Department, for neglect of three asylum petitions. In one case, Salomon did not file a Notice of Appeal because his client had failed to pay the balance of Salomon's fee. In another, Salomon had failed to file the Notice of Appeal because his office's filing system confused the identities of the complainant and another client. Finally, in the third, Salomon claimed that he failed to file the Notice of Appeal because he was unable to locate the client, but he could not produce documentary evidence of attempts to locate the client, who claimed that he had been in regular contact with Salomon's office. The complaints in these matters were filed in 2004 and 2005.

In his response to the Court's referral order, Salomon presented evidence of *pro bono* activity taken on behalf of the West African community from which many of his clients are drawn – specifically, the organization of a November 2007 demonstration responding to a decision of the Board of Immigration Appeals regarding female genital mutilation. In addition, Salomon submitted numerous letters of thanks from his clients.

B.    Salomon's Recent Conduct

At his September 2008 hearing, Salomon testified in mitigation of his past conduct that he had recently taken on new staff to assist with case management, and had begun to work with an outside attorney to prepare briefs. The Committee has conducted a review of Salomon's current caseload. Based on its review, the Committee finds some significant improvement in Salomon's compliance with scheduling orders, but nevertheless is troubled by indications of ongoing problems with Salomon's practice.

It appears that Salomon has not had any case dismissed for default in any case since early 2008. However, on at least three occasions within the past year, the Court has been forced to issue an Order to Show Cause why a matter for which Salomon was attorney of record should not be dismissed for Salomon's failure to comply with a briefing schedule. *See Akter v. Mukasey*, 08-0279; *Elyzabeth v. Keisler*, 07-4626; and *Diallo v. Mukasey*, 08-0199. *Akter* was subsequently dismissed pursuant to stipulation, while in *Elyzabeth* and *Diallo*, Salomon was granted permission to file a late brief.

At the Committee's request, Salomon submitted a letter explaining the circumstances of these defaults. *See* Letter dated March 22, 2009. In the case of *Akter*, Salomon claims that he had timely prepared a stipulation of dismissal following an April 2008 CAMP conference, but the stipulation was not filed with the Court until after the due date for Salomon's brief passed, and the Court had issued its August 18, 2008 Order to Show Cause. The Committee finds this explanation credible, and supported by documents submitted by Salomon, which show that an copy of the stipulation executed by both parties was faxed in May, 2008.

In the case of *Elyzabeth* and *Diallo*, Salomon claims that he "was not in receipt of the briefing schedules." Letter dated March 22, 2009. The Committee finds it exceedingly improbable that the briefing schedules were not sent to Salomon's office; however, there is no basis on this record to conclude that Salomon's claim is knowingly false. In light of Salomon's

-3-

past conduct and his hearing testimony, the Committee believes it is highly likely that Salomon or his office overlooked or mislaid the briefing schedules.[1]

## IV. Legal Standard

Under the Rules of this Committee,

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office, or the rules of professional conduct of any other state or jurisdiction governing the attorney's conduct. An attorney may also be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645 (1985). For "[m]ore specific guidance," we may look to "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 646 n.7.

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609 (7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer," ." D.R. 6-101(A)(3); 22 N.Y.C.R.R. § 1200.30(A)(3) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.3(b) (effective Apr. 1, 2009)

---

[1] The Committee notes, moreover, that Salomon's responses to the Court's Orders to Show Cause in those cases do not advance the explanation offered to the Committee, but are the same boilerplate and conclusory motions for extension of time for which he has been criticized by the Court in the past.

(hereinafter "N.Y.R."). In addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, we should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## V.    The Alleged Misconduct

At the hearing, Salomon acknowledged that he was "overwhelmed" by the volume of immigration cases during the 2005-2006 period. He ascribed this primarily to the Court's tightening of briefing schedules during that period:

> I think at one point the Courts were overwhelmed with thousands
> and thousands of cases being filed and staff counsel were
> overwhelmed. And at that point they put everything on the
> calendar for briefing schedules. At one point I think I received
> around 20 or 30 briefing schedules for briefs that were due within a
> week. . . . I spoke with one of the staff counsel, Stanley Bass at that
> time, and I said, I don't know how to get this thing done. He said,
> Do the best you can. . . . I actually fell behind on a lot of the
> briefing schedules and things were just snowballing.

Transcript of Sept. 8 Hearing ("Tr.") at 10. Salomon further explained that many of his defaults were a result of clients disappearing without payment. In such circumstances, he was unable to proceed with the appeal; Salomon testified that "that is the reality of being [a] sole practitioner and taking responsibilities and trying to cover expenses and maintain a practice at the same time." Tr. at 34. He was unable to describe any consistent method he had used to attempt to locate missing clients. Similarly, Salomon was unable to describe any consistent process for contacting clients to inform them of the dismissals of their cases.

Salomon was also unable to explain in detail why he had moved to reinstate in only four cases. He claimed that he believed that it would be futile to move to reinstate, in light of the Court's dismissal of his motions in *Diallo, Diallo,* and *Sourabie*; he was unable, however, to explain why the Court's grant of reinstatement in *Sylla* did not alter his practices. He testified

-5-

that he had not taken any particular efforts to monitor dismissals for default and to move to reinstate or take alternative steps to protect the rights of clients whose appeals had been dismissed. However, he regularly moves to reopen his clients' cases (including those cases dismissed for default) before the BIA, or pursues other relief from the agency, where there have been changes in the law, changes in country conditions, or changes in the clients' family status. He testified that he has moved to reopen before the BIA, or filed marriage petitions, in approximately 57 of the dismissed cases cited in the Court's referral order.

Salomon also testified that his practice was affected by a series of medical problems, which required him to have surgery and take leave from the office, in 2003, 2005 and 2006. While the Committee does not question the genuineness of Salomon's medical problems, it finds that they were at most a minor contributing factor to Salomon's defaults.

The evidence clearly shows that Salomon failed to comply with court scheduling orders, and failed to act diligently in prosecuting his clients' cases. As set out above, Salomon defaulted on more than 100 scheduling orders between 2005 and 2008. This conduct was not isolated, but persisted over several years, and despite explicit warnings from the Court. The Committee finds that Salomon's conduct was "unbecoming a member of the bar," Fed. R. App. P. 46(c), and "inimical to the administration of justice," *In re Snyder*, 472 U.S. at 645, and that Salomon neglected client matters in violation of D.R. 6-101(A)(3).

Partly due to Salomon's inability to provide details on his cases during this period, it is impossible to determine whether any client was actually prejudiced. It is clear, however, that numerous clients were at least put at grave risk of prejudice. Salomon does not appear to have taken organized or effective steps to protect the interests of those clients whose cases were dismissed. Finally, even in the unlikely event that no client was in fact prejudiced, Salomon's failure to comply with proper procedures for withdrawal or dismissal of appeals violated the Court's scheduling orders and his obligation either to represent his clients or terminate the representation, and disrupted the Court's proceedings and burdened the Court's staff with additional work. *See Bennett v. Mukasey*, 525 F.3d 222, 225 (2d Cir. 2008); D.R. 2-110(A)(2); 22 N.Y.C.R.R. § 1200.15(A)(2) ("A lawyer shall not withdraw from employment [without] complying with applicable laws and rules"); *see also* N.Y.R. 1.16(e).

In considering Salomon's relevant state of mind, *see* ABA Standards § 3.0(b), the Committee finds Salomon's account of the personal circumstances underlying his defaults generally credible. Salomon's neglect was inadvertent, the product of an "overwhelming" caseload and inadequate office systems. However, when a lawyer consciously takes on a high-volume practice such as Salomon's during this period, the risk of neglect due to overwork and inadequate coverage is a foreseeable one, and it is the lawyer's responsibility to avoid it. It does not appear that Salomon took adequate steps to protect his clients from the risks inherent in his high-volume practice. Additionally, the Committee is troubled by Salomon's failure to respond to his numerous defaults, or the Court's warning in *Sylla*, by taking active steps to protect the interests of clients whose cases had been dismissed.

-6-

There are both aggravating and mitigating factors here. The aggravating factors present are: (1) Salomon's prior disciplinary record; (2) a pattern of negligence, involving multiple instances of misconduct, over a period of several years; (3) the vulnerability of Salomon's immigrant clients; (3) Salomon's substantial experience in the practice of law. ABA Standards § 9.22(a), (c), (d), (h), (i).

Salomon's misconduct is mitigated by his remorse, his *pro bono* activities, and his cooperation with the Committee, ABA Standards § 9.32 (e), (g), (l), and to a limited extent by his medical problems during 2003, 2005 and 2006, § 9.32(c). To some extent, Salomon's misconduct is mitigated by the absence of a selfish motive, § 9.32(b); however, as discussed above, although Salomon may not have *intended* to neglect his clients, it was Salomon's decision to greatly increase his caseload without making adequate provision to protect his clients from the risks inherent in an over-stretched practice.

In light of Salomon's recent failure to abide by the Court's briefing schedules in *Elyzabeth v. Keisler*, 07-4626, and *Diallo v. Mukasey*, 08-0199, the Committee does not believe that Salomon's past conduct is significantly mitigated by recent improvements in his practice.[2] While there has clearly been an improvement over Salomon's extremely high default rate in 2005-2008, it does not appear that Salomon's problems in managing his practice are entirely behind him. Though the Court allowed Salomon to file late briefs in *Elyzabeth* and *Diallo*, and so neither client was actually prejudiced, Salomon's conduct posed a substantial *risk* of prejudice to both, and suggests an ongoing (though reduced) risk that Salomon may fail to adequately represent his clients.

Other than his numerous defaults, the Court's referral order alleged no further misconduct on Salomon's part, and the Committee is not aware of any other potential misconduct.

## VI.    Appropriate Sanctions

Salomon's conduct warrants discipline. The evidence in this proceeding clearly shows a pattern of neglect of client matters, primarily through persistent disregard of briefing schedules. This conduct was particularly severe during the period of 2005 to early 2008, but shows signs of continuing even after the Court's April 2008 Referral Order. The aggravating factors are significant, and mitigation limited.

Under the circumstances, the Committee believes that a brief period of suspension is required to reflect the seriousness of Salomon's past misconduct, and to protect the interests of potential clients. In light of the nature of Salomon's misconduct, and to ensure that his suspension is an occasion to continue his efforts to improve his management of his practice, the Committee recommends that Salomon be required to attend suitable a suitable CLE program on law office management, and that he be required to provide the Committee with ongoing status

---

2    As noted above, the Committee accepts Salomon's explanation of the missed briefing date in *Akter v. Mukasey*, 08-0279. To the extent that Salomon was responsible for any failure to timely file the stipulation with the Court, the Committee regards that failure as minor.

reports documenting the functioning of his practice.

## VII.  Recommendation

Salomon should be suspended for a period of three months.  In addition, he should be required, during the period of his suspension, to complete no fewer than six hours of CLE in law office management, from a CLE provider accredited by the bar of New York, in addition to the required hours of CLE.  Finally, he should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or is filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed.  It is expected that these reports will show no such instances absent exigent circumstance, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstance, the Committee may recommend the imposition of additional discipline, including but not limited to further suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed.  The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period.  The first reporting period shall commence 10 days after the Committee's recommendation is mailed to Salomon and shall end six months after the Second Circuit issues its order of disposition in this matter.  Each of the three subsequent reporting periods shall be for a reporting period commencing at the end of the prior reporting and ending six months later.  A total of four reports shall be prepared and mailed to the Committee Secretary.

Respectfully Submitted,

Mary Jo White /FSC

Member of the Committee
August 5, 2009

-8-